# IN THE SUPREME COURT OF TEXAS

No. 12-0968

IN THE INTEREST OF S.M.R., G.J.R. AND C.N.R., CHILDREN

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

**Argued September 11, 2013**

JUSTICE DEVINE delivered the opinion of the Court.

In this appeal, the court of appeals reversed a judgment terminating a father's parental rights and remanded the case, concluding that the termination grounds expressed in the trial court's judgment were not supported by factually sufficient evidence. 404 S.W.3d 612 (Tex. App.–Houston [1st Dist.] 2012). The Department of Family and Protective Services appeals the reversal, complaining of legal flaws in the court of appeals' factual sufficiency review of the evidence. The Department further complains that the court's decision to remand is erroneous because the record conclusively establishes another ground for terminating the father's rights, which was raised by the Department but omitted from the trial court's judgment. Finding no error in the court of appeals' judgment, we affirm.

I

Patricia and Sergio have three daughters: S.M.R., born in December 2003, G.J.R., born in May 2005, and C.N.R., born in January 2006. The couple never married, but lived together for

about four years. During this period, the Department of Family and Protective Services investigated allegations of neglect, domestic violence, and drug and alcohol abuse. Nothing came of those investigations. Patricia and Sergio ceased living together in 2007. The children remained with Patricia.

Since the separation, Patricia has had difficulty providing the children a stable home. Department records indicate contributing factors that included a disgruntled boyfriend, displacement by Hurricane Ike, and Patricia's bipolar disorder. Department records further indicate that Patricia has often relied on her sisters for housing and support.

In September 2008, the children were living with one of Patricia's sisters when the Department received a referral alleging neglectful supervision and medical neglect. The children had been ill, and the aunt did not have sufficient resources to pay for their medical care. About this time, Sergio agreed to take the children, and they moved into a trailer he shared with his girlfriend and her child. The children stayed there about ten weeks, but, just before Christmas, Sergio returned the children to their maternal aunt.

The children were returned because Sergio decided to serve a brief jail sentence in lieu of paying a Class C misdemeanor fine. He spent two weeks in jail for the misdemeanor. Upon his release, his relationship with the girlfriend apparently soured because subsequent contact with her led to misdemeanor harassment and criminal trespass convictions. Sergio did not return to jail, but neither did he return to reclaim custody of his children.

Meanwhile, Patricia and the children continued to live with one of Patricia's sisters. Medical resources were a continuing problem for the family, however, and a caseworker attempted to assist

Patricia in obtaining Medicaid and updating the children's immunization records during this period. But on February 24, 2009, Patricia went to jail for violating probation. The children remained with their aunt because their father's whereabouts were unknown.

In March, the aunt reported to the Department that the children were ill again and that she could not afford their medical care. The children still did not have Medicaid. The aunt also had been unable to enroll the eldest daughter in school because her immunizations were not current.

In April, the Department filed its original petition seeking temporary conservatorship of the children and possibly the termination of the parents' rights. Following an adversarial hearing at which only the Department and the children's guardian ad litem appeared, the court signed temporary orders appointing the Department temporary managing conservator. The court's order recited that there was "sufficient evidence to satisfy a person of ordinary prudence and caution that: (1) there was a danger to the physical health or safety of the child which was caused by an act or failure to act of the person entitled to possession and for the child to remain in the home is contrary to the welfare of the child; (2) the urgent need for protection required the immediate removal of the child and makes efforts to eliminate or prevent the children's removal impossible or unreasonable; and (3) notwithstanding reasonable efforts to eliminate the need for the children's removal and enable the children to return home, there is a substantial risk of a continuing danger if the children are returned home." The court further found that placement of the children with another relative was not in their best interests.

The mother had notice of the hearing but did not appear. Presumably, she was out of jail by this time. The father was not given notice of the hearing because, as already mentioned, his whereabouts were unknown.

In June, the Department completed a family-service plan that established tasks for the parents to regain custody of the children. The trial court incorporated the family-service plan's requirements into temporary orders. The father's order directed him to (1) enroll in domestic-violence and anger-management classes; (2) attend and complete a 12-step program such as Alcoholics Anonymous and obtain a sponsor; (3) maintain monthly contact with the caseworker; (4) participate in parenting classes; (5) participate in a psychological evaluation and follow all recommendations; (6) refrain from criminal activity, develop a support system, and obtain stable employment and housing; (7) complete a drug and alcohol assessment and submit to random urinalysis; and (8) provide documentation to his caseworker upon completion of each requirement.

The Department eventually found the father and notified him of the family-service plan's requirements. He signed a copy of the plan on October 23, 2009. Hearings on the parents' progress under the family-service plan followed.

After several months, the Department amended its pleadings to seek termination of the parents' rights, and the trial court set the case for trial. The termination case was tried to the court over several days in September and October 2010. The father participated at trial, but the mother came only for the first day. At the trial's conclusion, the court terminated both parents' rights, finding by clear and convincing evidence that both parents had "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or

emotional well-being of the child[ren]" and had "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." *See* TEX. FAM. CODE § 161.001(1)(D), (E) (the endangerment grounds). The trial court also found termination of parental rights to be in the children's best interests. *Id.* § 161.001(2). Although raised by the Department, the trial court's judgment did not include section 161.001(1)(O) (failure to comply with court order specifically establishing actions necessary for parent to obtain return of child) as a termination ground. The father appealed the judgment; the mother did not.

In a divided decision, the court of appeals reversed the trial court's judgment and remanded the case, holding the evidence factually insufficient to support the endangerment grounds. 404 S.W.3d 612, 630-32; *id.* at 634 (Jennings, J. concurring). A dissenting justice found the evidence legally and factually sufficient to support termination on endangerment grounds and would have affirmed the trial court's judgment. *Id.* at 635 (Brown, J. dissenting).

II

When a parent has abused, neglected, abandoned or endangered a child, a court may terminate the parent's rights to the child. *See* TEX. FAM. CODE § 161.001 (the involuntary-termination statute). The involuntary-termination statute provides two prerequisites for termination: First, the proponent must establish one or more of the recognized grounds for termination, and, second, termination must be in the child's best interest. *Id.* § 161.001 (1), (2). Because involuntary termination involves fundamental constitutional rights, however, evidence justifying termination must be clear and convincing. *In the Interest of E.C.R.*, 402 S.W.3d 239, 240 (Tex. 2013).

5

The involuntary-termination statute sets out twenty different courses of parental conduct, any one of which may serve as a ground that satisfies the statute's first prerequisite for termination. TEX. FAM. CODE §§ 161.001 (1)(A)-(T). The Department's pleadings in this case asserted three of the statutory grounds. The Department alleged endangerment of the children under subparts (D) and (E) and the parent's failure to comply with court-ordered conditions for the children's return under subpart (O). *Id.* § 161.001(1)(D), (E), (O). Again, clear and convincing proof of any one ground will support a judgment terminating parental rights, if similar proof also exists that termination is in the child's best interest. *In the Interest of E.C.R.*, 402 S.W.3d at 240.

A

The Department first argues that the court of appeals should have affirmed the trial court's judgment under subpart (O) because the father clearly failed to comply with the family service plan. Because the trial court's judgment did not include (O) as a ground for terminating the father's parental rights, the court of appeals declined to consider it. Although omitted from the judgment, the Department submits that the ground should nevertheless be implied in support of the judgment terminating parental rights under Texas Rule of Civil Procedure 299.

Rule 299 provides that "omitted unrequested elements" of a ground of recovery or defense may be presumed to support a judgment, when evidence supports the omitted element and the trial court has found one or more elements of the ground of recovery or defense. TEX. R. CIV. P. 299. Although the rule by its terms applies to a trial court's fact findings rather than statutory grounds included in the judgment, the Department contends that our analysis in *In re J.F.C.*, 96 S.W.3d 256

6

(Tex. 2002), required the court of appeals to deem a finding of the omitted ground and affirm on that basis.

The termination suit in *J.F.C.* was tried to a jury rather than the court and so implicated omissions from the court's charge under Rule 279, rather than omitted fact findings under Rule 299. *Id.* at 261-62; *compare* TEX. R. CIV. P. 299 (pertaining to omitted findings in bench trial) *with* TEX. R. CIV. P. 279 (pertaining to omissions from the jury charge). Although the jury determined that the parents' rights should be terminated, a problem existed with the court's charge. The submission was in broad form but failed to instruct the jury regarding the children's best interests as to some of the submitted statutory grounds, making it possible for the jury to terminate on a ground unconnected with the children's best interest. *Id.* Although the parents did not object to the omission, the court of appeals concluded that the omission was fundamental error that could be raised for the first time on appeal. *Id.* at 259. The court therefore reversed the termination judgment and remanded the case to the trial court.

While we agreed that the omission was error, we did not agree that the error was fundamental. *Id.* at 275-76. We viewed the charge error instead as the omission of "a statutorily prescribed element for parental termination." *Id.* at 262. Although omitted from the charge, the element was included in the trial court's judgment, which dutifully recited that termination was in the children's best interests. *Id.* at 263. We further concluded that the trial court's best-interest finding was proper as a deemed finding of an omitted element under Rule 279. *See id.* at 263 (noting that "'omitted element or elements shall be deemed found by the court in such manner as to support the judgment' if there is evidence to support such a finding"). We also held that the trial

7

court's deemed best-interest finding was supported by clear and convincing evidence and that the court of appeals therefore erred in reversing the termination judgment. *Id*. at 268-72.

Because the termination suit here was tried to the court instead of a jury, the Department argues that Rule 299 should apply similarly in this case to imply a finding as to the omitted ground, subpart (O). In other words, the Department contends that the trial court found the best-interest element and rendered judgment terminating parental rights so any termination ground raised by the pleadings and sufficiently supported by the evidence may be implied as a substitute for the insufficient ground actually included in the trial court's judgment.

Without deciding that Rule 299 might otherwise apply under these circumstances, we note its presumption extends only to "omitted unrequested elements." TEX. R. CIV. P. 299. Although subpart (O) was clearly omitted from the judgment, it was requested. Decisions beginning with *Vasquez v. Texas Department of Protective & Regulatory Services*, 190 S.W.3d 189, 194 (Tex. App.–Houston [1st Dist.] 2005, pet. denied), have refused to extend *J.F.C.*'s analysis to supply omitted grounds expressly presented to the trial court. The court of appeals here followed these cases, which hold that "termination can only be upheld on a ground that was both pleaded by the party seeking termination and found by the trier of fact." *In re K.G.*, 350 S.W.3d 338, 345-46 (Tex. App.—Fort Worth 2011, pet. denied); *see also*, *In re C.A.B.*, 289 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Ruiz v. Tex. Dep't of Protective & Regulatory Servs.*, 212 S.W.3d 804, 813 (Tex. App.–Houston [1st Dist.] 2006, no pet.); *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 252 (Tex. App.–Houston [1st Dist.] 2006, no pet.). The Department contends that these cases conflict with *J.F.C.* We disagree.

Our rules provide that a judgment in a suit filed by a governmental entity to terminate parental rights "must state the specific grounds for termination." TEX. R. CIV. P. 306. Although the judgment here predates the rule's recent amendment expressly imposing this requirement, the judgment nevertheless complies with the current rule. More significantly, the judgment conforms to the statute's requirements by stating the specific termination grounds and determining the children's best interests. *See* TEX. FAM. CODE § 161.001 (stating the two prerequisites for termination); *see also In re J.F.C.*, 96 S.W.3d at 261. The judgment was therefore complete on its face. No element was omitted, and nothing needed to be implied in support of the judgment under Rule 279.

B

The Department next contends that the evidence supporting subpart (O), the omitted ground, is not only legally sufficient but also conclusive, an argument the *Vasquez* line of authority did not consider. This argument does not ask the appellate court to imply a fact finding; rather, it suggests that no facts were at issue. The Department's argument thus presents a question of law, that is, whether the Department conclusively established subpart (O) as a basis for terminating the father's parental rights in the trial court.

Subpart (O) provides for termination of the parent-child relationship if by clear and convincing evidence the parent has:

> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the

child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

TEX. FAM. CODE § 161.001(1)(O). The Department maintains that the record conclusively establishes that (1) the children were in the Department's custody for more than nine months as the result of an order under Chapter 262 for the children's abuse or neglect, (2) the trial court ordered the father to complete all services in the family service plan and the father understood what actions were required for reunification with his children, and (3) the father failed to comply with material parts of the order.

The Department points out that the trial court, without objection, took judicial notice of its order granting the Department temporary managing conservatorship of the children, which included findings concerning the physical health and safety risks to the children. The caseworker's affidavit supporting the children's removal was also admitted without objection. That affidavit recited the parent's unfortunate history with child protective services, the parents' challenges in providing a stable home, and the maternal aunt's inability to meet the children's medical and physical needs without the parents' support. The Department submits that these documents together establish subpart (O)'s predicate that the Department's custody result from "the child's removal from the parent under Chapter 262 for the abuse or neglect of the child."

Abuse and neglect are not defined in chapter 262. Nor does the chapter indicate any special or technical meaning for the terms. *See* TEX. GOV'T CODE § 311.011(b) (requiring words and phrases to be construed according to any acquired technical or particular meaning). When terms are not defined and no technical or particular meaning is apparent from the context, we apply the

10

statute's words according to their common usage. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex. 2008). Thus, whether removal under the chapter was for abuse or neglect depends on the surrounding facts and circumstances and is generally determined on a case-by-case basis. For example, in one case a child was removed for neglect when the mother failed to return for the child after being released from police custody. *In re A.A.A.*, 265 S.W.3d 507, 513-15 (Tex. App.–Houston [1st Dist.] 2008, pet. denied). In another case, a child was removed for neglect where the mother's living conditions were unstable, and the child had been left with a person who had health problems and could not provide adequate care. *D.F. v. Tex. Dep't of Family & Protective Servs.*, 393 S.W.3d 821, 830-31 (Tex. App.–El Paso 2012, no pet.). Although not defined in chapter 262, the preceding chapter provides a nonexclusive list of acts or omissions constituting "abuse" and "neglect" when investigating reports of child abuse or neglect. TEX. FAM. CODE §§ 261.001(1), (4). Recently, we acknowledged that the acts or omissions listed in chapter 261 might be used to inform the terms' use in other chapters. *In re E.C.R.*, 402 S.W.3d at 248. Under chapter 261, "neglect" may include in part the failure "to seek, obtain, or follow through with medical care for a child." TEX. FAM. CODE § 261.001(4)(B)(ii).

The caseworker averred that the children's removal under chapter 262 was because of medical neglect and neglectful supervision. At the time of their removal, the mother was in jail on a probation violation, the father was out of jail but missing, and the caretaker was struggling to care for the children because of the parents' failure to provide meaningful financial or medical support. Previous referrals to the Department indicated that this lack of support had prevented the children from obtaining medical care for past illnesses and from obtaining their required immunizations.

11

When the Department obtained custody, the children had scabies, and one child had an injury to her ankle.

Because the father could not be found before the chapter 262 adversarial hearing, he had no opportunity to contest the children's removal. But he also did not contest their removal or otherwise dispute the Department's appointment as temporary managing conservator under chapter 262 at subsequent hearings, including the termination trial. We accordingly agree with the Department that no factual dispute underlies the circumstances of the children's removal or the temporary orders issued under chapter 262.

We further agree that no factual dispute exists about the family-service plan's requirements or Sergio's understanding of what the plan required. Sergio admitted he knew the tasks he needed to complete to regain possession of his children. In fact, he argued that he complied, or at least substantially complied, with the plan.

The plan required Sergio to submit to a psychological examination, which he did. The psychological report recommended referral for vocational counseling, stress management, substance abuse, parent education, and family therapy. The plan also required him to remain drug free, submit to random drug tests, refrain from criminal activity, and maintain stable housing and employment.

No proof showed that Sergio violated either the drug or criminal-activity prohibitions. Proof of Sergio's employment and housing stability was less definitive. Sergio testified about his construction-work income but provided no pay stubs because he was always paid in cash. Sergio further testified that he was about to move into his girlfriend's mother's home and that the house would have a bedroom for his girls. The stability of his housing was thus dependent on Sergio's

12

relationship with the girlfriend. At the hearing, Sergio also produced certificates showing completion of an outpatient substance-abuse program and a domestic-abuse program. He testified to attending several AA meetings and about his difficulty finding a sponsor. His testimony also indicated frustration with the Department's delays in responding to his inquiries about local services and generally with its assistance in helping him complete the tasks required under the family-service plan.

Department witnesses, on the other hand, blamed Sergio for not completing material parts of the family-service plan, listing the father's shortcomings as (1) failing to complete anger-management classes, (2) failing to advance beyond the first step of Alcoholics Anonymous or find a sponsor; (3) failing to provide proof that he participated in parenting classes; and (4) failing to attend vocational-counseling classes. The Department concludes that these failures, together with children's uncontested removal under chapter 262, conclusively establish subpart (O) as a proper ground for terminating the father's rights.

Parents frequently fall short of strict compliance with a family-service plan's requirements. The Department's argument, however, accepts nothing less and thus would require termination for a parent's imperfect compliance with the plan. But whether a parent has done enough under the family-service plan to defeat termination under subpart (O) is ordinarily a fact question. *See, e.g., In re J.S.*, 291 S.W.3d 60, 66–67 (Tex. App.—Eastland 2009, no pet.) (affirming termination where mother complied with parts of service plan but did not obtain stable housing, employment, or basic necessities for children); *In re C.M.C.*, 273 S.W.3d 862, 874–876 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (declining to reverse termination on mother's argument of substantial compliance with

service plan); *Liu v. Dep't of Family and Protective Servs.*, 273 S.W.3d 785, 801–802 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (affirming termination of schizophrenic mother's parental rights despite partial compliance with service plan because she failed to take prescribed medications as required by plan, resulting in hallucinations and violent behavior); *In re T.T.*, 228 S.W.3d 312, 317–321 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (affirming termination where mother failed to comply with four of seven requirements and father failed to comply with three of seven requirements); *In re C.D.B.*, 218 S.W.3d 308, 311–312 (Tex. App.—Dallas 2007, no pet.) (affirming termination based on mother's partial compliance with service plan); *In re A.D.*, 203 S.W.3d 407, 411–412 (Tex. App.—El Paso 2006, pet. denied) (affirming termination because mother failed to meet family-service plan's material requirements including drug assessment, finding a job, and providing a safe home).

While parents have generally had little success arguing substantial compliance to reverse a termination judgment under subpart (O), *see, e.g., In re M.C.G.*, 329 S.W.3d 674, 675–76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied), here the argument simply suggests a factual dispute. Conceivably, subpart (O) could be established as a termination ground as a matter of law. But when questions of compliance and degree are raised, and the trial court declines to terminate on this ground, the evidence is not conclusive; it is disputed. *See In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.–Eastland 2009, no pet.) (analyzing substantial compliance argument as a factual sufficiency challenge). We accordingly reject the Department's contention that it conclusively established subpart (O) as a ground for terminating the father's rights in this case.

III

The Department's final complaint concerns the court of appeals' review of the evidence supporting termination of the father's rights under subparts (D) and (E), the endangerment grounds. The appellate court found the evidence to be factually insufficient. 404 S.W.3d at 630-31, 635. The statutory endangerment grounds require clear and convincing proof that the parent has "(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child [and] (2) that termination is in the best interest of the child." TEX. FAM. CODE §§ 161.001(1)(D),(E), (2).

The relevant endangerment evidence at trial can be grouped into six categories: sexually transmitted disease, sexual abuse, criminal convictions, alcohol and drug abuse, neglect, and domestic abuse. Although neglect had been the principal reason for removing the children, the Department subsequently became more concerned about sexual abuse, and this became its primary focus at trial. The sexual-abuse evidence is thoroughly discussed in the court of appeals' three opinions, and each opinion rejects the Department's theory of sexual abuse. *See, e.g.*, 404 S.W.3d at 643-44 (Brown, J., dissenting) (agreeing that evidence failed to demonstrate that the father sexually abused any of the children).

Although not its primary thrust at trial, the Department here shifts attention to domestic abuse, complaining that the court of appeals erroneously disregarded relevant evidence of such abuse when performing its factual sufficiency review. In particular, the Department complains that

15

the court ignored relevant evidence of abuse reported in the mother's psychological examination, which repeated the mother's claim that the children had witnessed their father being abusive to her.

The concurring justice explained that this report was not only hearsay but devoid of any specifics and presented in a way that made it unlikely the trial court even considered it:

> . . . this hearsay evidence, offered without any contextual evidence or explanation at all of when, how, or exactly what "abuse" occurred, is contradicted by S.H.R.'s direct testimony. Given how the case was presented to the trial court, it is highly doubtful whether the trial court considered or even read the mother's hearsay statement in this report. But, even if it did, a fact-finder could not have reasonably resolved the disputed evidence in favor of a finding of actual endangerment.

*Id*. at 635 (Jennings, J. concurring). The Department, however, objects in particular to a statement in the court's lead opinion, which observed that the court could "discount relevant, probative evidence which was admitted, but never discussed or argued to the fact-finder." *Id*. at 632. The Department submits that an appellate court cannot simply disregard relevant, probative evidence when conducting its factual sufficiency review.

We agree that relevant evidence may not be ignored, but we do not agree that the court of appeals did that in this case. Although "disregard" is one possible meaning for the word "discount," to discount can also mean "(1): to make allowance for bias or exaggeration in (2): to view with doubt." WEBSTER'S NEW COLLEGIATE DICTIONARY 323 (1981). That the court of appeals intended this latter meaning is clear from its three opinions, which do not ignore the evidence but rather discuss it, explaining its relevance, significance, and reliability.

To reverse a judgment for factual insufficiency, the court of appeals must detail all the relevant evidence and explain why it is insufficient to support the judgment. *Maritime Overseas*

*Corp. v. Ellis*, 971 S.W.2d 406, 407 (Tex. 1998). Although this Court itself lacks jurisdiction to determine questions of factual sufficiency, we nevertheless have the "responsibility to ensure that the intermediate appellate courts follow applicable legal standards in making their review of the evidence." *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex. 1993). Thus, we are not powerless to correct a clearly erroneous review of the evidence. Our review, however, checks only that the intermediate court detailed all of the relevant evidence and clearly stated why that evidence was factually insufficient. *Id.* at 28. When an appellate court fails to apply this standard, we may reverse and remand for the court to reexamine the evidence under the appropriate standard.

A judgment terminating parental rights is factually sufficient when "the evidence is such that a reasonable jury could form a firm belief or conviction that grounds exist for termination." *In re C.H.*, 89 S.W.3d 17, 18-19 (Tex. 2002). The court of appeals here applied the appropriate standard, reviewed all the evidence, and explained its insufficiency. Contrary to the Department's contention, the court did not apply an erroneous standard of review.

The court of appeals' judgment is accordingly affirmed.

_____
John P. Devine
Justice

Opinion Delivered: June 6, 2014

17