ACCEPTED
01-15-00830-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/29/2015 8:31:06 PM
CHRISTOPHER PRINE
CLERK

**NO. 01-15-00830-CV**

**IN THE**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/29/2015 8:31:06 PM
CHRISTOPHER A. PRINE
Clerk

**FIRST COURT OF APPEALS**

**HOUSTON, TEXAS**

TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES
Relators,

IN RE: IN THE INTEREST OF C.M. AND C.F.

On Appeal from Cause No. 13CP0068
In the 306th Judicial District Court of Galveston County, Texas;
Honorable Judge Anne B. Darring

Appellant's Brief

Barry C. Willey
SBN 00788670
Galveston County Legal Department
722 Moody, 5th Floor
Galveston, Texas 77550
(barry.willey@co.galveston.tx.us)
(409) 770-5562
(409) 770-5560 (Fax)
Counsel for Texas Department of Family
and Protective Services

ORAL ARGUMENT REQUESTED

i

## IDENTITY OF PARTIES AND COUNSEL

Relators certify that the following is a complete list of the parties, the attorneys and any other person who has any interest in the outcome of this lawsuit:

**Appellant:**

Texas Department of Family
And Protective Services

**Counsel for Appellant:**

Barry C. Willey
SBN 00788670
Galveston County Legal Department
722 Moody, 5th Floor
Galveston, Texas 77550
(barry.willey@co.galveston.tx.us)
(409) 770-5562
(409) 770-5560 (Fax)

**Appellee:**

Diane Clark
Trial Counsel for: Amber Fraser
3027 Marina Bay Drive, Suite 108
League City, Texas 77537
TEL: 281-535-3500
dianeclark@comcast.net

Jason Blake Haynes

Attorney for: Clint Melvyn
19703-B Eastex Freeway, #43
Humble, TX 77338
Tel: 713.868.1111 or 832.877.3713
Fax: 866.615.6138

Michelle Bassett
Attorney for Unknown Father
P.O.Box 3570
Galveston, TX 77552
Tel: 409.256.5742
Fax: 888.678.7764
mbassett@bassettlegal.com

Rachel Dragony
Attorney for Children
P.O.Box 3901
Galveston, TX 77552
Tel: 281.333.5400
Fax: 936.225.5804

# TABLE OF CONTENTS

Identity of Parties and Counsel………………….....…………………….... ii

Table of Contents…………………………………………………………...iv

Table of Authorities…………………………………………………….…vi

Issues Presented…………………………………………………….………viii

Statement of the Case…...………………………………………….………..1

Jurisdiction………………………………………………………….………2

Statement of Facts…………………………………………………….………3

Standard of Review…………………………………...…………………….6

Argument and Authorities……………………………………………….7

I.      THE TRIAL COURT ABUSED ITS DESCRETION WHEN IT GRANTED
        A DIRECTED VERDICT WHEN SUFFICIENT EVIDENCE EXISTED
        TO SUBMIT ISSUES TO THE JURY……………………………………7

II.     THE TRIAL COURT ABUSED ITS DESCRETION BY FAILING TO
        SUBMIT THE ISSUES OF TERMINATION TO THE JURY

        A) There was Sufficient Evidence to Submit the Issue of Termination
           to the Jury under §161.001(O) as the Mother Failed to Comply
           With a Court Ordered Plan. (Issue One Restated) ………………....9

        B) The Trial Court improperly issued a directed verdict for
           AR denying termination of parental rights to her children as

AR used a controlled substance in contravention of the guidelines set out in Section 161.001(P) of the Texas Family Code (Issue Two Restated)..………………………………………..…..12

C) There was sufficient evidence for the trial court to submit the issue of AR's termination of parental rights under Section 161.001(1)(D) and (E) of Chapter 161, Texas Family Code. (Issue Three and Four Restated) …………………………………15

D) Termination was in the Best Interests of the Children (Issue 5)……………………………………………………17

Conclusion and Prayer for Relief.………………..…………………. 21

Certificate of Service.…………………………………………………...24

Certificate of Compliance.……………………………………………23

Appendix To The Appellant's Brief.…………..……………………….25

## TABLE OF AUTHORITIES

**Cases**

<u>Texas Supreme Court</u>

Brazoria Cnty. Children's Protective Servs. v. Frederick,
     176 S.W.3d 277 (Tex. App. 2004) ...................................................... 7, 21
City of Keller v. Wilson, 168 S.W.3rd 802, 823 (Tex. 2005) .......................... 6
Collora v. Navarro, 574 S.W.2d 65 (Tex.1978) ............................................... 9
Holley v. Adams, 544 S.W.2d 367 (Tex. 1976) ........................................... 17,18
In re McAllen Med. Ctr., Inc., 275 S.W.3d 458 (Tex.2008) ........................... 8
In re Reece, 341 S.W.3d 360 (Tex. 2011) ........................................................ 8
In re S.M.R., 434 S.W.3d 576 (Tex. 2014)................................................... 10, 11
In the Interest of J.P.B., 180 S.W.3d 570, 573–74 (Tex.2005) ...................... 17
Jones v. Tarrant Util. Co., 638 S.W.2d 862 (Tex.1983) ................................. 9
Prudential Ins. Co. v. Fin. Review Servs., 29 S.W.3d 74 (Tex.2000).............. 7
Qantel Business Sys. v. Custom Controls Co.,
     761 S.W.2d 302, 303 (Tex.1988)........................................................... 8
Szczepanik v. First S. Trust Co.,
     883 S.W.2d 648 (Tex.1994) .................................................................. 8
Walker v. Packer, 827 S.W.2d 833 (Tex.1992)............................................... 14
White v. Southwestern Bell. Tel. Co., 651 S.W.2d 260 (Tex.1983)………….8

<u>Texas Court Of Appeals</u>

Hycarbex, Inc. v. Anglo-Suisse, Inc.,
     927 S.W.2d 103 (Tex. App. 1996)......................................................... 9
In re A.C., 394 S.W.3d 633 (Tex. App. –Houston1st Dist.] 2012) ................. 17, 18
In re A.D., 203 S.W.3d 407 (Tex.App.-El Paso 2006, pet. denied) ................ 11
In re C.D.B., 218 S.W.3d 308 (Tex.App.-Dallas 2007, no pet.) ..................... 11
In re C.M.C.,
     273 S.W.3d 862 (Tex.App.-Houston [14th Dist.] 2008, no pet.) ........... 11
In re J.S., 291 S.W.3d 60 (Tex.App.-Eastland 2009, no pet.) ......................... 11
In re J.T.G., 121 S.W.3d. 117 (Tex. App.-Fort Worth, 2003, no writ)……….15
In re T.R.B., 350 S.W.3d 227 (Tex. App. 2011) ............................................. 7
In re T.T., 228 S.W.3d 312 (Tex.App.-Houston [14th Dist.] 2007, no pet.).... 11
Jordan v. Dossey, 325 S.W.3d 700
     (Tex. App.-Houston[1st Dist]] 2010, no writ)....................................... 15

Liu v. Dep't of Family and Protective Servs., 273 S.W.3d 785
(Tex.App.-Houston [1st Dist.] 2008).......................................................... 11
University Nat'l Bank v. Ernst & Whinney,
773 S.W.2d 707 (Tex.App.—San Antonio 1989) ................................... 9
Vasquez v. Tex. Dep't of Protective & Regulatory Servs.,
190 S.W.3d 189 (Tex.App.-Houston [1st Dist.] 2005,)……………… 14
Walker v. Tex. Dept. of Family and Protective Servs., 312 S.W.3d 608
(Tex. App. -Houston [1st Dist] 2009)...................................................... 14

**Statutes, Constitution & Other Law**

Tex. Const. art. I, § 15................................................................................. 7
Tex. Fam. Code Ann. § 105.002.................................................................. 7
Tex. Fam. Code Ann. § 161.001 (0) ...........................................……………9
Tex. Fam. Code Ann. § 161.001 (1) (D) and (E) ............................................ 16
Tex. Fam. Code Ann. § 263.403................................................................... 3
Tex. Gov't Code Ann. §22.221(b)............................................................... 3
Tex.R. Civ. P. 268....................................................................................... 7

# ISSUES PRESENTED

### Issue One

Whether a trial court can properly issue a directed verdict for denying termination of parental rights to children for failing to successfully complete a court ordered family service plan under Section 161.001(1) (O) of Chapter 161, Texas Family Code when it is uncontroverted that the plan was not completed.

### Issue Two

Whether trial Court properly issued a directed verdict for AF denying termination of parental rights to her children by AF using a controlled substance in contravention of the guidelines set out in Section 161.001(P) of the Texas Family Code.

### Issue Three

Whether the trial court to properly issued a directed verdict for AF denying termination of parental rights to her children when she knowingly placed or allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child under Section 161.001(1) (D) of Chapter 161, Texas Family Code.

### Issue Four

Whether the trial court to properly issued a directed verdict for AF denying termination of parental rights to her children when she engaged in conduct or knowingly placed the child with persons who engaged in conduct which endanger the physical or emotional well-being of the child under Section 161.001(1) (E) of Chapter 161, Texas Family Code.

### Issue Five

Whether the trial court properly issued a directed verdict for the defendant when sufficient evidence was in the record to support a finding that the children' best interest was served by either the DFPS remaining as managing conservator of the children or the termination of the parent child relationship.

## STATEMENT OF THE CASE

**Nature of the Case:**

On August 28, 2013, and March 10. 2014, the Texas Department of Family and Protective Services of Galveston County filed its Original Petitions for Protection of a Child, for Conservatorship, and for termination in Suit Affecting Parent-Child Relationship, requesting to terminate the parental rights of AF and CM, as parents of CM and CF., respectively.[1]

On October 14, 2014, the court consolidated the cases under Cause No 13-CP-0068.[2]

**Trial by Jury:**

On March 10-13, 2015, the trial was conducted in the presence of the jury with the Honorable Judge Anne Darring presiding.

**Trial Court Disposition:**

The DFPS closed the presentation of evidence on its case on March 13, 2015, and counsel for AF made a motion for a directed verdict on all grounds for termination. The court granted the motion and did not allow the jury to consider any of the grounds for termination (Texas Family Code Sections 161.001(1)(D),(E),(O) and (P), and 161.003).[3]

---

[1] RR Vol 12, Ex's 8, 9, 10, 11, 12 ,13
[2] CR, Order on Motion to Consolidate.
[3] RR Vol 10, 55/13-60/12

1

After granting the Motion for Directed Verdict[4], the judge dismissed the jury and entered an Order for Monitored Return of the Children to the Parent, whereby maintaining jurisdiction over the case under §263.403 of the Texas Family Code.[5] The DFPS filed a motion for new trial which was denied. (Ex. D)

The DFPS filed a Notice of Appeal on March 31, 2015, under Cause No. 01-15-00298-CV, In the Court of Appeals for the First District of Texas. However, a motion to dismiss the appeal was filed on June 2, 2015, as it was determined that there was not a final judgement that could not yet be appealed.

A Petition for Writ of Mandamus was subsequently filed by DFPS and denied by this court on July 30, 2015. (No.01-15-00578-CV, *In re Texas Department of Family and Protective Services*, per curium)

On September 10, 2015, the trial court judge issued a final dismissal of the case because of "operation of law." (Ex. F -CR 514)

**JURSIDICTION**

The Court of Appeals has jurisdiction of this appeal under Tex. Govt. Code Section 22.220 and Tex. Civ. Prac. & Rem. Code Section 51.012.

---

[4] CR, Ex D, Order on Motion for Directed Verdict
[5] CR, Ex C, Order for Monitored Return of Children to Parent.

2

## STATEMENT OF FACTS

This case is about CM and CF. The mother of the Children is AF, the alleged father is CLM, and their continued right to the children was the subject of the underlying suit.

On March 10, 2015, a trial on the merits began. Trial proceeded until March 13, 2015, when the Judge issued a directed verdict for the respondent AF. The case did not go to the jury, over objections of the counsel for the Department and a Motion for New Trial was filed.

A Notice of Appeal was filed on March 31, 2015 and was docketed as 01-15-00298-CV in this court. A motion to dismiss was subsequently filed by the Department on May 7, 2015, as it was later determined that there was not a final judgment that could be appealed. As the case has been dismissed and the order become final, the Department now files this appeal.

On August 28, 2013, the Department of Family and Protective Services filed its "*Original Petition for Protection of a Child for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship*" for CM. On October 1, 2013, an "Agreed Temporary Order Following a Show Cause Hearing" was entered appointing DFPS as temporary managing conservator of CM.[6] On October 14, 2014, Cause No. 14CP0022, In the Interest of CF, was consolidated

---

[6] RR Vol 12, Pet's Ex. 15.

with CM's case under 13CP0068 cause number.[7] Thus, both CM and CF's cases were considered under 13CP0068. On the same day, the Department also filed a "Second Amended for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship."[8]

AF had a history with CPS. In the past, three other children who had been under AF's care had also been taken in to custody by the Department as a result of AF's drug use.[9] Her other children, H and K, were removed from her care around 2005 after CPS involvement, as stated by AF, "because of my drug use."[10] She also had a third child, CH temporarily removed from her care at the birth of the child, only to be removed permanently in 2008 only after having the child back for two months.[11]

In March 2013, AF and the Child's father CLM, were referred to Family Based Safety Services (FBSS), a branch of CPS, for assessment. The parents admitted to drug use, but were willing to accept the services provided by FBSS, such as a drug assessment and counseling.[12] The mother had admitted to using cocaine and marijuana just several months prior to the assessment.

---

[7] CR, Ex. A, Order on Motion to Consolidate.
[8] CR, Ex. B Second Amended for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship.
[9] RR Vol 13, Plaintiff's Ex. 47, p.153 FBSS Family Assessment.
[10] RR Vol 8, 10/-12
[11] RR Vol 8 12/10-18,13/11-13.
[12] RR Vol 13, p.153 FBSS Family Assessment; RR Vol 7, Page 68/Lines 3-7 (68/3-7). (72/20-23.)

4

After the FBSS began, AF tested positive for both hydrocodone and marijuana, on May 14, 2013 and July 30th, 2013.[13] It was at that time that the department made the decision to file to for custody of CM.

CF was born in 2014 and immediately removed from AF because CF tested positive for prescribed barbiturates.[14] The cases of CM and CF were eventually consolidated by the courts.[15]

Family Plans of Service were set up for CM and CF, for both the permanency goal was family reunification.[16] The service plan for CF was set up on March 17, 2014, and the service plan for CM was entered into on November 7, 2013.[17] The service plans combined noted that Ms. AF had tested positive for drugs during her pregnancy with CF and that she need to maintain her sobriety and maintain a safe, stable, and *drug free environment.*[18](emphasis added) AF was also required to complete a psychological evaluation and a parenting assessment, and follow the recommendations.[19]

A part of these recommendations were for AF to complete an intensive outpatient drug treatment program.[20] Although she started the outpatient three

---

[13] RR Vol 7, 71/6-24.
[14] RR Vol 8, 14/7-19
[15] CR – Order on Motion to Consolidate, 14 Oct 2014.
[16] RR  Vol 12, Ex. 17(CM) and 19(CF).
[17] RR  Vol 12, Ex. 19(CF); and Ex. 16, and Ex. 18 (CM)
[18] Id.
[19] Id.
[20] RR Vol 7, 108/6-18.

separate times, she never finished. AF knew that she was required to complete outpatient therapy and admitted on the stand that she did not complete her required therapy, despite multiple opportunities.[21] Furthermore, she admitted to use of Vicodin at the end of 2014, without a prescription.[22]

After the Department presented its case to the jury, counsel had indicated to the court that it only intended to submit to the jury issues under §161.001 (D),(E),(O), (P) and 161.003. For the purposes of this appeal, only the provisions under §161.001 will be addressed.

## STANDARD OF REVIEW

A trial court may grant a directed verdict in a termination proceeding only when the evidence is legally insufficient to support termination. *See* Tex.R. Civ. P. 268. In reviewing the grant or denial of a directed verdict, an appellate court assesses whether the trial court correctly determined that the evidence was legally insufficient. *See City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005) (stating that "the test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review").

"A directed verdict in favor of defendant is appropriate when the plaintiff does not present evidence to raise a fact issue that is essential to the plaintiff's right

---

[21] RR Vol 8 16/5-20/4; Vol 7,108/19-109/13.
[22] RR Vol 8, 57/2-24

6

of recovery." *Brazoria Cnty. Children's Protective Servs. v. Frederick*, 176 S.W.3d 277, 279 (Tex. App. 2004), citing *Prudential Ins. Co. v. Fin. Review Servs.,* 29 S.W.3d 74, 77 (Tex.2000). "In reviewing a directed verdict, we consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, here CPS, disregard all contrary evidence and inferences, and give CPS, as the losing party, the benefit of all reasonable inferences that follow from the evidence." Id., citing *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994).

## ARGUMENT AND AUTHORITIES

I.   A TRIAL COURT ABUSES ITS DESCRETION WHEN IT DENIES A PARTY A RIGHT TO A JURY VERDICT WHEN A TRIABLE ISSUE OF FACT EXISTS.

The Texas Constitution guarantees that the right to a trial by jury "shall remain inviolate." *Tex. Const. art. I, § 15*. "Section 105.002 of the Family Code provides that a party is entitled to a verdict by the jury and the court may not contravene the jury verdict on the issue of conservatorship." *In re T.R.B.*, 350 S.W.3d 227, 231-32 (Tex. App. 2011), See *Tex. Fam. Code Ann*. § 105.002 (West 2008). The trial court in this case abused its discretion by issuing a directed verdict and not allowing the issues to be submitted to the jury.

7

Generally, in reviewing the trial court's granting of a directed verdict, an appellate court must consider the evidence in the light most favorable to the party against whom the verdict was directed, disregarding all contrary evidence and inferences. *Qantel Business Sys. v. Custom Controls Co.,* 761 S.W.2d 302, 303 (Tex.1988); *White v. Southwestern Bell. Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983); *Jones v. Tarrant Util. Co.,* 638 S.W.2d 862, 865 (Tex.1983); *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978). If there is any conflicting evidence of probative value which raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue. *Id.* On the other hand, when no evidence of probative force on an ultimate element exists or when the probative force or slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the directed verdict must be affirmed. *See University Nat'l Bank v. Ernst & Whinney,* 773 S.W.2d 707, 709 (Tex.App.—San Antonio 1989, no writ).

*Hycarbex, Inc. v. Anglo-Suisse, Inc.,* 927 S.W.2d 103, 107-08 (Tex. App. 1996)

"A trial court has no 'discretion' in determining what the law is or applying the law to the facts," and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992)

III.   THE TRIAL COURT ABUSED ITS DESCRETION BY FAILING TO
       SUBMIT THE ISSUES OF TERMINATION TO THE JURY

A. There was Sufficient Evidence to Submit the Issue of Termination to the
   Jury under §161.001(O) as the Mother Failed to Comply With a Court
   Ordered Plan. (Issue One Restated)

Section 161.001(O) states that the court may order termination of the parent-

child relationship if the court finds by clear and convincing evidence that the

parent has:

> failed to comply with the provisions of a court order that
> specifically established the actions necessary for the parent to obtain
> the return of the child who has been in the permanent or temporary
> managing conservatorship of the Department of Family and Protective
> Services for not less than nine months as a result of the child's
> removal from the parent under Chapter 262 for the abuse or neglect of
> the child.
> Tex. Fam. Code Ann. § 161.001 (West).

Parents frequently fall short of strict compliance with a family-service plan's

requirements.  And it is clear that the Department would prefer nothing less than

perfect compliance with a service plan; however, when perfect compliance does

not occur, it raises the issue of substantial compliance and whether a parent has

done enough to defeat termination.  This fact issue should prevent the issuance of a

directed verdict, regardless of the party.  The uncontested fact that a parent has

failed to complete a plan under subpart (O) is clearly sufficient to create a fact

9

question that should be submitted to the trier of fact. *In re S.M.R.,* 434 S.W.3d 576, 584 (Tex. 2014).

It is not out of the ordinary for the appellate courts to encounter a party seeking to overturn an order removing the child from a parent, arguing that the parent had substantially complied with the family service plan. As cited by the Court in *In re S.M.R.*, numerous cases treat issues of substantial compliance of a service plan as fact issues:

> *In re J.S.,* 291 S.W.3d 60, 66–67 (Tex.App.-Eastland 2009, no pet.) (affirming termination where mother complied with parts of service plan but did not obtain stable housing, employment, or basic necessities for children); *In re C.M.C.,* 273 S.W.3d 862, 874–876 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (declining to reverse termination on mother's argument of substantial compliance with service plan); *Liu v. Dep't of Family and Protective Servs.,* 273 S.W.3d 785, 801–802 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (affirming termination of schizophrenic mother's parental rights despite partial compliance with service plan because she failed to take prescribed medications as required by plan, resulting in hallucinations and violent behavior); *In re T.T.,* 228 S.W.3d 312, 317–321 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (affirming termination where mother failed to comply with four of seven requirements and father failed to comply with three of seven requirements); *In re C.D.B.,* 218 S.W.3d 308, 311–312 (Tex.App.-Dallas 2007, no pet.) (affirming termination based on mother's partial compliance with service plan); *In re A.D.,* 203 S.W.3d 407, 411–412 (Tex.App.-El Paso 2006, pet. denied) (affirming termination because mother failed to meet family-service plan's material requirements including drug assessment, finding a job, and providing a safe home).

In re S.M.R., 434 S.W.3d 576, 584 (Tex. 2014)

As seen in the cases above, the courts have normally upheld termination findings in which an argument was made that there was only substantial compliance with the service plan. Accordingly, an issue of substantial compliance should not prevent a jury from considering the issue.

AF was ordered by the court to attend inpatient drug rehab counseling and follow recommendation of discharge.[23] Part of those recommendations included intensive outpatient therapy. It is a compelling fact that AF did not successfully complete the portion of the service plan that required outpatient therapy for substance abuse, even admitting so in her testimony:

> Q: Okay. And after your inpatient, were you recommended to do any other substance abuse program?
> AF: Intensive outpatient.
> Q: Okay. So you knew that you were supposed to be doing intensive outpatient?
> AF: Yes, ma'am.
> ……
> Q: Okay. So the first time during the FBSS case in 2013, you had a recommendation for [intensive outpatient]?
> AF: Yes, ma'am.
> Q: Okay. So the first time was in 2013. Did you complete it in 2013?
> AF: No, ma'am.
> …..
> Q: When's the fourth time you started intensive outpatient?
> AF: November of 2014.

---

[23] RR Vol 12, Ex. 17, 18 &19

….

Q: Did you complete it?

AF: no, ma'am.[24]

AF further testified that she started intensive outpatient therapy four times and completed none of them.[25] She was aware of the recommendations to perform the intensive outpatient therapy and did not complete it.[26] The need for the outpatient therapy is highlighted by her history of drug use by her and the alleged father CLM.[27] While it is clear that AF did not complete her service plans, that fact brings into focus the issue of whether substantial compliance with the plan is sufficient; however, that is an issue for the trier of fact to decide and the trial abused its discretion by not allowing the jury to decide this matter.

As result of AF's failure to complete her family service plan, the issue of termination of her parental rights under subsection (O) should have been submitted to the jury.

B. The Trial Court improperly issued a directed verdict for AF denying termination of parental rights to her children as AF used a controlled substance in contravention of the guidelines set out in Section 161.001(P) of the Texas Family Code.

---

[24] RR Vol 8 16/7-20/4.
[25] Id.
[26] RR Vol 8, 19/15-25.
[27] Vol 12, Pet Ex. 45, page 4-5 of

The court may order termination of the parent-child relationship under subsection (P) of Chapter 161.001, if the court finds by clear and convincing evidence that the parent has:

> used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:
> (i) failed to complete a court-ordered substance abuse treatment program; or
> (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance;

> Tex. Fam. Code Ann. § 161.001 (P) (West)

In this case AF both failed to complete the outpatient portion of a court-ordered substance abuse treatment and continued to using Vicodin without a prescription after the completion of her in-patient treatment. The December after AF had completed her inpatient treatment, she was asked by Gulf Coast Center to take a drug test but refused because she had taken a Vicodin two weeks prior that was not prescribed to her.[28]

While this drug usage could be portrayed as a meaningless one-time slip, it is cause for true concern. As noted by Dr. Venette Westhoven, a clinical psychologist who assessed AF, the mother was: 1) diagnosed with

---

[28] RR Vol 8, 57/11-24.

13

an opiate use disorder, 2) failed to complete her intensive outpatient program and 3) Vicodin seemed to be VR's drug of choice.[29] Her professional opinion was that persons with this particular disorder often have a pattern of usage that "is usually a period of sobriety followed by a relapse, a period of usage followed by a relapse; and that only about 20 to 30 percent of people are able to maintain sobriety of a lifetime once they have started using and have this disorder."[30] AF knowingly took a narcotic after she had signed a Child Protective Services Family Service Plan and after she had completed her inpatient treatment. Since actions like this expose the child to the possibility that the parent may be impaired or imprisoned, illegal drug use can support termination. *Walker v. Tex. Dept. of Family and Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App. -Houston [1st Dist] 2009). Such drug use can support a finding of termination even if there is no direct evidence of a parent's continued drug use actually injuring the child. Id. citing *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.,* 190 S.W.3d 189, 195–96 (Tex.App.-Houston [1st Dist.] 2005, pet. denied)

Therefore, AF's actions of failing to complete her outpatient treatment taking drugs after completing her inpatient treatment were sufficient evidence to submit the case to a jury.

---

[29] RR Vol 8, 104/9-105/2
[30] Id.

14

C. There was sufficient evidence for the trial court to submit the issue of AF's termination of parental rights under Section 161.001(1) (D) and (E) of Chapter 161, Texas Family Code.

In order for a court to terminate parental rights under subsection (D), there must be a showing that the environment in which a child is placed posed a danger to the child's emotional or physical health. Termination could be based on a single act or omission by the parent. *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.-Houston[1st Dist]] 2010, no writ). Therefore, a parent's conduct may produce an endangering environment for a child. Id. Drug use by a parent has been found to support a conclusion that the child's surroundings endanger her. *In re J.T.G.*, 121 S.W.3d. 117, 125 (Tex. App.-Fort Worth, 2003, no writ).

Unlike subsection (D), subsection (E) requires more than a single act, and the Department contends that CLM and AF's history of drug use and history with the three other children being removed satisfies this criteria. Both Stacy Mahoney, a DFPS worker and AF testified to these factors.[31]

When DFPS first became involved in this case in January of 2013, AF tested positive for both cocaine and marijuana.[32] Furthermore, CLM, the alleged father, who failed to appear at trial, tested positive for cocaine and admitted to using it and marijuana.

---

[31] RR Vol 7,38/6-40/11 and Vol 8, 10/10-12
[32] RR Vol 7,38/6-40/11

15

AF's history of drug use is well documented. She was a frequent user of marijuana and used for a total of eighteen years, beginning at the age of thirteen and continuing until February 2013.[33] She used cocaine for fifteen years with her last reported use being in January of 2013.[34] And her other substance is Vicodin (hydrocodone) and at the time of her assessment in May of 2013, she admitted to regularly using it three to six times in the prior week.[35] During AF's treatment plan, she tested positive and had excessive absences so she was transferred to a residential program.[36] She also admitted to using Vicodin that had not been prescribed to her.[37]

Other testimony indicated that AF used prescription drugs until she was five months pregnant with CM[38]. At the time CF was removed from AF, she was taking up to ten Vicodin a day, just to function and to be able to go to work.[39] AF also related to a DFPS case worker that AF felt that her second child was developmentally delayed because she was using crack cocaine and she was also using with her third child.[40]

---

[33] RR Vol 9, 230/2-6
[34] RR Vol. 9, 230/8-11
[35] RR. Vol 9, 230/11-15
[36] RR Vol 9, 235/10-18
[37] RR Vol 8, 33/7-24
[38] RR Vol 9, 37/10-14
[39] RR Vol 9, 37/14-17
[40] RR Vol 9, 37/17-21

16

These facts would all support a finding of a termination of custody. The Department does not contend that there were other factors that may have been considered by a trier of fact, it is essential that a trier of fact be able to make that determination. A directed verdict in this case was a clear abuse of discretion on behalf of the trial judge.

D. Termination was in the Best Interests of the Children
In a proceeding to terminate the parent child relationship brought under §161.001 of the Texas Family Code, the DFPS must establish one or more of the acts or omissions enumerated under subsection (1), and that termination is in the best interest of the child. *In the Interest of J.P.B.*, 180 S.W.3d 570, 573–74 (Tex.2005).

In determining the child's best interests, the court should consider a multitude of factors, including (1) the child's desires, (2) the current and future physical and emotional needs of the child, (3) the current and future physical danger to the child, (4) the parental abilities of the person seeking custody, (5) whether programs are available to assist the person seeking custody in promoting the best interests of the child, (6) plans for the child by the person seeking custody, (7) stability of the home, (8) acts or omissions of the parent that may indicate that the parent-child relationship is not proper, and (9) any excuse for acts or omissions of the parent. *In re A.C.*, 394 S.W.3d 633, 641-42 (Tex. App. –Houston [1[st] Dist.] 2012) citing *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976).

17

However, "there is no requirement that the Department prove all these factors, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the child's best interest." Id. "[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tex. Fam.Code Ann. § 263.307(a) (West 2008). And the Holley factors are not the only consideration relevant to determining the best interest of the child.

> In determining whether a parent is willing and able to provide a safe environment, we consider several factors, including (1) the child's and vulnerabilities; (2) developmental evaluations of the child's parents, other family members, and others who have access to the child's home; (3) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (4) willingness and ability of the child's family to seek, accept, and complete counseling services and cooperate with agency supervision; (5) the willingness and ability of the child's family to effect positive changes within a reasonable period of time; and (6) whether the child's family demonstrates adequate parenting skills. *Id.* § 263.307(b). Evidence establishing one of the predicate acts under section 161.001(1) also may be relevant to determining the best interest of the child. *See In re C.H.,* 89 S.W.3d at 27–28.

*In re A.C.*, 394 S.W.3d at 641-42.

Several witnesses testified that they considered termination to be in the best interests of the children. Staci Mahoney, a worker with DFPS, worked with the family prior to the DFPS taking custody of the children.[41] She testified that the

---

[41] RR Vol 7, 31/22-25

DFPS got involved in 2013. She noted that both AF and CFM[42] both previously tested positive for cocaine and marijuana and also recommended counseling because of domestic violence.[43] Gracie Pequeno, another worker with the Department of Family Protective Services, testified that she thought termination would be in the best interests of the child because she thought the children deserved a safe and stable home environment, free from drugs and a lifestyle that would not put them at risk of having to have CPS intervene because of a relapse.[44] This possibility of relapse was also of great concern to the clinical psychologist, Venette Westhoven, PhD, who examined AF and who noted evidence of continuing relapses.[45] Dr. Westhoven also testified that AF had a history of family violence with Clint and AF had spent time in jail and that Clint was sent to prison.[46]

These facts are sufficient evidence that would support a jury's finding that DFPS should remain the permanent managing conservator or that AF's custody should be terminated. However, there was further evidence that the best interests of the children would be served by severing the parent child relationship.

---

[42] RR Vol 8, 97/15-19(CLM was the father of KM, CM and CF)
[43] RR Vol 7, 41/17 42/4
[44] RR Vol 7, 138/5-15
[45] RR Vol 8, 104/12-20 and Pet. Ex. 45, Psychological Testing Report, page 10 of 11 located at RR Vol 12, 208 of 212.
[46] RR Vol 8, 97/8-14

The guardian ad litem in the case, Jocelyn Salinas, an advocate supervisor with CASA, testified that that her recommendation was for termination of parental rights because of the AF's truthfulness and her concern over the children's future.[47]

Aimee Godinich was the foster parent with whom CM and CF, at the time of the trial, had been placed for approximately one year.[48] Aimee had a stable home and held the same job for about fourteen years. She testified that she would like to adopt the girls and even if she could not adopt for any reason she willing to continue to care for the children.[49]

AF's maternal aunt, Helene, also testified in support of termination of AF's parental rights being terminated.[50] Helene, who cared for the children for a period of time before they went into the care of Ms. Godinich, testified that AF had strained relations with her family because of drug use, instability and ongoing investigations with CPS.[51] She also testified that she would be concerned if the children were returned to AF because of her instability in living arrangements.[52] She was also in favor of AF's rights to the children being terminated because of AF's history.[53]

---

[47] RR Vol 9, 117/25- 119/25
[48] RR Vol 9, 169/5-7
[49] RR Vol 9, 182/2-9
[50] RR Vol 9, 198/20-199/19
[51] RR Vol. 9, 198/20 -199/3
[52] RR Vol. 9, 199/6-19
[53] RR Vol 9, 202/17 -203/1

This evidence is critical in determining the stability of the home, the parenting skills of AF, the ability of the parent to provide a safe environment free from drugs, and the risk of relapse behavior by the parent. Furthermore, the plans for the child by the DFPS provided the most stable and safe environment for the children.

There was sufficient evidence in the record to support a finding that termination of parental rights was in the best interests of the children such that the issue should have been presented to the jury. The evidence presented must be veiwed in light most favorable to the DFPS and all contrary evidence and inferences must be disregarded, and give DFPS all the reasonable inferences from favorable evidence. *Brazoria Cnty.,* 176 S.W.3d at 279 (citations omitted). When the evidence above is considered using the proper standard, it shows that there was a triable issue of fact that should have been submitted to the jury.

## CONCLUSION AND PRAYER

The facts presented at trial were sufficient to submit the issue of termination to a jury. It was undisputed that AF did not complete her family service plan, admitting it herself while testifying. Further, AF's long history of drug use coupled with her relapse after she completed her inpatient treatment would support

21

termination. However, there was ample evidence that the best interests of the children would be served by not returning the children to AF.

A trier of fact, when considering AF's past behavior and history of having her other children removed from her custody would clearly have sufficient evidence to support a termination, or at the least allow the Conservatorship by DFPS to continue.

The decision in this case is important to show the limitations of a trial judge in granting a directed verdict.

The respondent Judge abused her discretion by granting a directed verdict to the real party in interest and refusing to allow the issues of termination, or granting permanent managing conservatorship to DFPS, to be presented to the jury. The petitioner requests that this court reverse the directed verdict of the trial court and order instructions for the trial court to grant a new trial.

Respectfully submitted,
GALVESTON COUNTY LEGAL DEPT.

/s/ Barry C. Willey
BARRY C. WILLEY
SBN 00788670

GALVESTON COUNTY LEGAL DEPT.
722 Moody, 5th Floor
Galveston, Texas 77550
(409) 770-5562
(409) 770-5560 (fax)
Attorney for Department of Family and
Protective Services

## Certification

I certify that I have reviewed the brief and have concluded that every factual statement made in the petition is supported by competent evidence included in the the record. Each document in the appendix is either a certified copy, or a true and correct copy of the documents as it exists in the record of the District Clerk.

/s/ Barry C. Willey
Barry. C. Willey

## Cerification of Compliance

I certify that the foregoing document contains 4987 words. The text is in New Times Roman 14 point font and the footnotes are in 12 point font.

/s/ Barry C. Willey
Barry. C. Willey

## Certificate Of Service

In accordance with TRAP Rule 9.5, I certify that a true and correct copy of Appellant's Brief and Appendix was served electronically or via facsimile to all known counsel of record on this 29th day of October, 2015, to the following:

Honorable Anne Darring
600 59th Street, Suite 3304
Galveston, TX 77551
Tel: 409-766-2255
anne.darring@co.galveston.tx.us

Diane Clark
3027 Marina Bay Drive, Suite 108
League City, Texas 77537
TEL: 281-535-3500
dianeclarklaw@comcast.net

Jason Blake Haynes
19703-B Eastex Freeway, #43
Humble, TX 77338
Tel: 713.868.1111 or 832.877.3713

Fax: 866.615.6138
blakehaynes444@gmail.com

Michelle Bassett
P.O.Box 3570
Galveston, TX 77552
Tel: 409.256.5742
Fax: 888.678.7764
mbassett@bassettlegal.com

Rachel Dragony
P.O.Box 3901
Galveston, TX 77552
Tel: 281.333.5400
Fax: 936.225.5804
rachel@dragonylaw.com

/s/ Barry C. Willey
Barry. C. Willey