

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-16-00242-CV

**IN THE INTEREST OF S.S.R.**, J.H.R. Jr., and G.D.R., Children

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-01761
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:   Rebeca C. Martinez, Justice

Sitting:   Karen Angelini, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  October 5, 2016

AFFIRMED

Appellant J.R., whom we will refer to as "Father," appeals the trial court's order terminating his parental rights to his three children, arguing that the evidence is legally and factually insufficient to support both the trial court's findings for the statutory grounds for termination as well as its finding that termination of his parental rights is in the children's best interest.  We affirm the trial court's order.

### BACKGROUND

Father and G.R.[1] are the parents of three children: S.R., J.R., and G.R.  On May 13, 2013, the Texas Department of Family and Protective Services received a referral alleging neglectful

---

[1] G.R. whom we refer to as "Mother," did not appeal the order terminating her parental rights.

supervision of the children. On July 24, 2014, the Department filed its Original Petition for Protection of a Child, for Conservatorship and for Termination in Suit Affecting the Parent-Child Relationship. The Department was appointed temporary conservator of the children, then ages 13, 10, and 8. Father was ordered by the trial court to comply with the requirements of the Department's service plan during the pendency of the suit, including attending individual counseling and submitting to random drug tests ("including saliva test, UA's, and hair follicle").

The Department returned the children to Father's care on a monitored basis on August 21, 2015. On January 25, 2016, however, the children were removed from Father's home and returned to foster care. Two days later, S.R. ran away from her foster placement. On March 29, 2016, the case proceeded to a bench trial. Father was not present, and the trial court overruled his attorney's announcement of "not ready," noting that Father was present for mediation one week earlier. Four witnesses testified, including the Department caseworker, the children's therapist, the foster mother of J.R. and G.R., and G.R.'s special education teacher. At the conclusion of the trial, the trial court terminated Father's parental rights pursuant to sections 161.001(b)(1)(D), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (O), (P) (West Supp. 2016).

## DISCUSSION

A trial court may order termination of the parent-child relationship if the trial court finds by clear and convincing evidence at least one of the statutory grounds for termination and that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2016). A judgment terminating parental rights must be supported by clear and convincing evidence. *Id.* To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the

deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable determinations of credibility. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* But we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence. *Id.*

When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

On appeal, Father challenges both the trial court's findings of the statutory grounds for terminating his parental rights and the best-interest finding. To sustain a parental termination, an appellate court need only substantiate one statutory ground was sufficiently proven before the trial court. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

### A. *Statutory Ground: Failure to Comply with Court Order/Family Service Plan*

The trial court found Father failed to complete his family service plan.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).  Subsection (O) provides for termination of the parent-child relationship if by clear and convincing evidence the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

*Id.*  Although the family service plan was not admitted at trial, the State did ask the trial court to take judicial notice of "the record," which included the family service plan, and the trial court complied.  "Whether a parent has done enough under the family-service plan to defeat termination under subsection (O) is ordinarily a fact question."  *In re S.M.R.*, 434 S.W.3d 576, 584 (Tex. 2014) (citing *In re J.S.*, 291 S.W.3d 60, 66-67 (Tex. App.—Eastland 2009, no pet.) (affirming termination where mother complied with parts of service plan but did not obtain stable housing, employment, or basic necessities for children); *In re C.M.C.*, 273 S.W.3d 862, 874-76 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (declining to reverse termination on mother's argument of substantial compliance with service plan); *In re T.T.*, 228 S.W.3d 312, 317-21 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (affirming termination where mother failed to comply with four of seven requirements and father failed to comply with three of seven requirements); *In re C.D.B.*, 218 S.W.3d 308, 311-12 (Tex. App.—Dallas 2007, no pet.) (affirming termination based on mother's partial compliance with service plan); *In re A.D.*, 203 S.W.3d 407, 411-12 (Tex. App.—El Paso 2006, pet. denied) (affirming termination because mother failed to meet family-service plan's material requirements including drug assessment, finding a job, and providing a safe home).

The Department caseworker testified that per the service plan prepared by the Department, Father was "required to do a psychosocial assessment, individual counselling, parenting, a drug assessment, housing, employment[,] and to submit to random UAs[2] throughout the life of the case." She testified that Father completed the services up until the time when the children were returned to his care. When the children were returned to his care, he "was not submitting to random UAs and he was not meeting the medical and dental needs of the children, as well as the physical needs of the children." Despite instruction from the caseworker, Father failed to schedule medical and dental appointments for the children. The caseworker was particularly worried about the youngest child, G.R., who was given a "care kit" from his school to brush his hair and his teeth because those needs were not being met at home. The child informed the caseworker that there was no electricity in his father's home and that the family went to stay with Mother, where G.R.'s cousin bit him and hit him with a belt. The caseworker observed bite marks and belt marks on the child. Father refused to test for at least four UAs. He also failed to continue to engage in counselling. Additionally, Father permitted the children to have unsupervised visitation with Mother during the time that the children were returned to his care in contravention of the service plan.

In light of the entire record, we conclude the evidence was both legally and factually sufficient to prove, by clear and convincing evidence, that Father failed to comply with a court order that established the actions necessary for him to gain custody of the children in violation of section 106.001(b)(1)(O). TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Because we uphold this determination, we need not address the remaining grounds for termination set forth in the trial court's termination order. *See In re A.V.*, 113 S.W.3d at 362.

---

[2] UA is shorthand for urinalysis drug test.

*B.    Best Interest*

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, when the court considers factors related to the best interest of the child, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a) (West Supp. 2016). In determining whether a child's parent is willing and able to provide the child with a safe environment, the court should consider: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. *Id.* § 263.307(b).

Additionally, in reviewing the sufficiency of the evidence to support the best-interest finding, we may apply the factors set out in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

Those factors include, but are not limited to: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child held by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27.

Finally, evidence that proves one or more statutory ground for termination may constitute evidence illustrating that termination is in the child's best interest. *Id.* at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). In addition, the trier of fact may measure a parent's future conduct by his past conduct in determining whether termination of parental rights is in the child's best interest. *Id.*

Here, the caseworker testified that J.R. and G.R. were doing well in their foster placements and that the middle child, J.R., excels academically and is involved in sports. J.R. told the caseworker that he does not want to leave his foster family and that he wants to be adopted by them so that he can continue to go to school and be involved in sports. The caseworker further stated that she believed that termination of the parents' parental rights was in the best interest of the children because the parents failed to engage in Family Based Services three times since

August 2014, and "throughout that time, they have not been able to demonstrate and make long-term changes that are needed to properly care for the children and meet their needs."

The children's therapist testified that when he first started working with the children, all three of them informed him that this was the "last opportunity" they were giving their parents. The children had been removed twice before, and told the therapist that if their parents "messed up again," they wanted to be adopted. The therapist stated that, despite working very closely with the parents, he believed it was in the best interest of the children to terminate the parents' parental rights because the parents did not seem willing to make changes to their lifestyles or habits.

J.R.'s and G.R.'s foster mother also testified. She stated that after the boys were returned from Father's care the second time, she noticed that G.R. was too thin and his eyes were sunken in. She also had to retrain him to take care of basic hygiene tasks like bathing and brushing his teeth that he had previously learned with her. J.R. was also thinner upon returning from Father's home and both boys were very hungry. She stated that she was willing to be a permanent placement for J.R., but not for G.R. who has special needs and requires a lot of daily attention. J.R. expressed to the foster mother that he wished to remain in her care.

Finally, G.R.'s special education teacher testified that G.R. told her that his house did not have electricity and that he always came to school hungry. She gave him food for breakfast and lunch; he would take leftover food home in his backpack for dinner. G.R. came to school without bathing and every day the teacher had to brush his teeth and give him deodorant. She would also wash his school uniform for him because it was so dirty. On one occasion, G.R. told her that his cousin hit him with a belt and bit him. When the teacher asked what his Father did in response, G.R. told her that he said not to tell the teacher because the Department would get involved and take him away.

In closing arguments, the children's ad litem stated that she had specific instructions from J.R. that he wanted to be adopted and to continue "phone contact on birthdays with the parents." Father's attorney stated that her client had obvious intellectual deficiencies and is not capable of having the children placed with him; however, she strongly advocated against termination. Concerned about separating the children and the lack of permanency for two of the three children, she asked that the Department consider being named permanent managing conservator without termination until it could be determined where S.R. and G.R. would be placed.

In reviewing this record, we observe that the trial court heard testimony regarding the inadequacy of Father's parenting skills as well as his unwillingness to cooperate with the Department's supervision and to effect positive environmental and personal changes during the pendency of the case. Testimony was also presented regarding G.R.'s special needs and the fact that his most basic needs were not being met while in Father's care. Finally, the trial court heard from more than one witness that J.R. did not wish to return to his parents' care. Thus, based on the totality of the evidence present in the record before us, we conclude the trial court could have formed a firm belief or conviction that it was in the children's best interest that Father's parental rights be terminated. *See In re J.F.C.*, 96 S.W.3d at 266; *In re C.H.*, 89 S.W.3d at 25.

## CONCLUSION

We overrule Father's issues on appeal and affirm the order of the trial court.

Rebeca C. Martinez, Justice