# Supreme Court of Texas

No. 22-0451

In the Interest of R.J.G., R.J.G., D.G.M., Children

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued September 12, 2023**

JUSTICE HUDDLE delivered the opinion of the Court.

Both this Court and the Supreme Court of the United States have long recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. Thus, Texas law rightly requires that, before infringing on a parent's right to care for and have custody of her child, the State, usually acting through the Texas Department of Family and Protective Services, must demonstrate to a court that governmental intrusion is warranted. The bar is—appropriately—highest when the State seeks a judgment effecting the outright and permanent termination of the parent–child relationship.

The predicate grounds that the Legislature has determined justify such a termination are recited in Family Code Section 161.001(b)(1). All require the State to prove its case by clear and convincing evidence, and nearly all require proof that the parent has

abandoned or endangered the child or that the parent has engaged in specified criminal conduct. The exception is (O). Unlike the other grounds for termination, it permits termination if a parent fails to comply with a family service plan, which, in lay terms, is a list of tasks the Department requires—and the trial court orders—the parent to perform to obtain the return of a child following removal.

In this case, the Department sought termination based solely on (O) and conceded that, although she did not comply in the precise way the Department hoped she would, Mother complied with the plan's terms. Indeed, after the children were removed because she was late picking them up from daycare one night, Mother spent a year performing the tasks the Department and the trial court's order told her were required to get her children back. She attended individual counseling, parenting classes, and substance abuse classes; stayed drug-free; maintained a job and a clean and stable home; and stayed in contact with her caseworker. But at trial, which was to the bench, Mother's caseworker (the Department's only witness) testified that Mother had not complied with the plan in the way the Department wanted. The trial court concluded that it could not consider whether Mother "substantially complied" with the plan's requirements and thus seemingly decided strict compliance with the written terms of the plan (as glossed by the caseworker's testimony) was required to avoid termination. Concluding Mother had not satisfied that standard, the trial court rendered a judgment of termination, which the court of appeals affirmed.

In light of Section 161.001(b)'s plain text and the fundamental rights at issue, we reject this reading of (O). To begin, the statutory text permits termination only if the provision with which the parent failed to comply was "specifically established" in the written court-ordered service plan. The predicate ground for termination under (O) cannot be proven by clear and convincing evidence if premised on a plan requirement that is unwritten, and thus supplied only by the caseworker's oral testimony, or on one that is written but vague.

Moreover, even if the Department proves by clear and convincing evidence that a parent failed to comply with a requirement "specifically established" in the written plan, that requirement may be so trivial and immaterial, considering the totality of what the plan requires, that the parent's noncompliance does not justify termination. A trial court should not reflexively order termination when the evidence demonstrates noncompliance with a plan requirement. Instead, the trial court should consider whether the nature and degree of the asserted noncompliance justifies termination under the totality of the circumstances.

The record reflects that the trial court believed termination was mandatory if Mother's compliance fell short of perfect in the Department's eyes. It therefore seemingly did not consider the plan's specificity or lack thereof, nor did it consider the nature or degree of the asserted noncompliance or Mother's commendable progress toward satisfying the numerous plan provisions that were more central to achieving the Department's goal of family reunification. Applying the correct standards, we hold there is legally insufficient evidence to

3

support termination under (O) by clear and convincing evidence. Because (O) was the only asserted ground for termination, we reverse and render judgment for Mother.

## I. Background

Mother was nineteen years old when she gave birth to her third child, D.M. Shortly thereafter, the Department of Family and Protective Services opened an investigation based on a report of neglectful supervision by Mother of her other children. About a month later, Mother dropped her two older children at a daycare facility and failed to pick them up before it closed at midnight. The police contacted Mother, and she lied to them about the reason for her delay.

The Department took possession of all three children the next day. It filed a petition seeking termination of Mother's parental rights, as well as the rights of the children's alleged fathers. The trial court signed an emergency order that named the Department the children's temporary managing conservator.

The Department prepared a single Family Plan of Service for both Mother and D.M.'s father. Because the Department ultimately sought termination based on Mother's alleged failure to comply with this plan, we describe it in some detail. Its overarching or "primary permanency goal" is "family reunification" for all three children. The plan identifies a number of joint goals Mother and D.M.'s father should accomplish to obtain reunification: "have a stable home and employment"; "undergo substance abuse treatment"; "sign up for parenting classes . . . so they can acquire new skills on how to keep their children safe and maintain hygienic conditions at home"; and "take care of all pending legal matters

4

such as past arrest[s] that might be pending." The plan also states two individual goals for Mother: "participate in a psychological evaluation" and "go to MHMR for an evaluation and advise them about her symptoms and mental health family history."

The plan then recites issues and needs of each parent and sets forth "required action[s]" that each agreed to take. The Department asserts Mother failed to comply with three such requirements.[1] Under the heading "Parenting Skills," the plan states:

> [Mother] agrees to attend, participate and successfully complete parenting classes and submit to the Department a certificate of completion to file with the court. . . .

Under "Coping Skills/Mental Health," the plan says:

> [Mother] has been referred to begin services with LPC Mr. Daniel Browne. [Mother] [will] address the reason of removal and explore healthier ways to deal and cope with stressors of life. . . . [Mother] will also address and learn different ways to cop[e] with her mood changes and how [to] give her children a safe and stable environment. [Mother] in addition will undergo individual counseling in order to address her needs. [Mother] will also address and

---

[1] In its briefing to this Court, the Department asserted that Mother failed to comply with a fourth requirement that she "stay away from friends/family that might be involved in criminal activity." The basis for this claim was that Mother communicated with D.M.'s father while he was incarcerated for assaulting her. We doubt that a reasonable person would understand a requirement to "stay away" from those involved in criminal activity to specifically establish a requirement that Mother cease telephonic communication with D.M.'s father, especially when the Department itself crafted the plan jointly for them. In any event, the Department conceded at oral argument that it did not rely on Mother's purported failure to comply with this provision as a basis for seeking termination in the trial court and disclaimed reliance on it in this Court. Accordingly, we do not consider it as an alternative ground to support the judgment.

5

find healthier ways to raise her children and work with their family structure.

Finally, under "Substance Abuse/Use," the plan states:

> [Mother] agrees to submit to substance abuse classes at S.C.A.N. and provide the Department with a certificate of completion.

Mother does not dispute the contents of the plan, nor does she dispute that the trial court ordered her to comply with it.

Mother set out to take the required classes but had difficulty getting a response from S.C.A.N.[2] due to the onset of the COVID-19 pandemic. So the Department asked Daniel Browne, a licensed professional counselor to whom the Department referred Mother for individual counseling, to include parenting and substance abuse classes as part of Mother's individual counseling. Browne agreed, and Mother regularly attended counseling sessions with Browne for nearly a year. Notably, the plan was never amended to reflect this change of providers.

A year after the children's removal, the Department filed a report reflecting that Mother attended numerous sessions with Browne and that she "has demonstrated adequate and appropriate compliance with the [plan]." Yet two months later, Browne changed his mind, apparently at the Department's prodding: he discharged Mother and noted in his records that she "was not able to complete services successfully." Browne's records state that he believed Mother "did not show the capacity or willingness to remove herself from violence or drug abuse

---

[2] S.C.A.N. stands for Serving Children and Adults in Need, a services provider located in Mother's hometown. In addition to requiring Mother to attend substance abuse classes at S.C.A.N., the plan identified it as the resource for her parenting classes.

6

related influences." Mother's caseworker's trial testimony shed light on this sudden change. She testified that Browne discharged Mother because the Department informed him that Mother continued to communicate with D.M.'s father by phone while he was in jail for assaulting Mother. The record does not reflect that Mother had any reason to believe communicating with D.M.'s father was prohibited under the plan.

In the hopes of continuing to progress toward reunification, Mother sought additional counseling after Browne discharged her. She participated in counseling classes at Grupo Amor, where her Department caseworker referred her. According to Mother, her Grupo Amor classes covered "anger management, substance abuse, domestic violence, . . . how to feed the family, and how to be a single mother." She testified that she completed her parenting and substance abuse classes at Grupo Amor and her counselor gave the Department a certificate to that effect. The caseworker denied having the certificate but admitted that Mother "complet[ed] her family domestic violence classes" and that those classes touched on anger management and lifestyle. Mother continued to attend counseling sessions at Grupo Amor until shortly before trial, when she stopped going due to her work schedule.

Mother got still more counseling, from another therapist to whom Grupo Amor referred her. The caseworker testified that Mother "received a recommendation," meaning that Mother had successfully completed this therapy. Yet the caseworker discounted it because, she testified, the therapist did not know and did not address "the reason of

7

the removal and also all the different incidents that had happened throughout the life of the case."

Thus, despite Mother's sustained efforts to complete the plan and demonstrate her desire and ability to parent, such as by seeking counseling, staying drug-free, visiting with her children, and maintaining employment and stable housing, the caseworker testified at trial that Mother did not meet her plan's requirements. Then, on cross-examination, she conceded that Mother *had* complied, just not in the way she needed to or was ordered to:

> Q:    Would it be fair to say she has complied; she just hasn't complied when the State needed her to comply or in the way she was ordered to comply?  Is that a fair statement?
>
> A:    Yes.

The trial court found by clear and convincing evidence that Mother failed to complete the plan.  Rejecting Mother's argument that she presented evidence of substantial compliance, the court reasoned that "the Family Code provides that the parent should demonstrate completion of the service plan. . . .  It doesn't say substantially comply, and I will not infer that as the Code does not allow me to infer that provision."  "For that reason," the trial court concluded, "I will go ahead and . . . grant the termination of the parental rights between [Mother] and the three children under the only provision of Texas Family Code 161.001(b)(1)(O)."  The trial court further found that termination was in

the children's best interest and rendered judgment terminating Mother's parental rights to the three children.[3]

The court of appeals affirmed, stating that Mother did not dispute that she "failed to comply with the service plan." ___ S.W.3d ___, 2022 WL 1158680, at *2 (Tex. App.—San Antonio Apr. 20, 2022). The appellate court also rejected Mother's substantial-compliance argument, concluding that "substantial compliance with a family service plan is not the same as complete compliance." *Id.* at *3 (quoting *In re J.M.S.*, No. 04-18-00608-CV, 2019 WL 574862, at *3 (Tex. App.—San Antonio Feb. 13, 2019, no pet.)). Mother petitioned this Court for review.[4]

## II. Applicable Law

### A. Family Service Plans

Under the Family Code, the Department of Family and Protective Services may remove an abused or neglected child from the home and

---

[3] The trial court also terminated the parental rights of the fathers of all three children. None of the fathers appealed.

[4] Mother got review only after hurdling multiple obstacles, none of which were of her making. When her court-appointed appellate counsel would not respond to her inquiries regarding the court of appeals' decision, Mother traveled from Laredo to this Court to seek guidance from the clerk's office. She then filed a pro se request for extension of time and request for appointment of new appellate counsel. Mother's counsel moved to withdraw because a petition for review "may be beyond counsel's competence." We abated the appeal and remanded to the trial court to determine whether Mother was entitled to appointment of new counsel. Due to a miscommunication in the district clerk's office, this Court's order was not delivered to the trial court. Mother called this Court multiple times asking for updates, then filed a letter stating she had been told by someone at the trial court that it "didn't assign new appellate counsel" and that she tried but failed to obtain a new lawyer on her own. Mother ultimately filed a pro se petition for review; later, the trial court appointed a new appellate attorney. He filed an amended petition for review, which we granted.

9

seek an emergency order granting the Department temporary possession. *See* TEX. FAM. CODE §§ 262.001, .102. Within forty-five days after an order appointing the Department as temporary managing conservator, the Department must prepare and file a service plan. *Id.* § 263.101. The service plan "shall be developed jointly by the child's parents and a representative of the department." *Id.* § 263.103(a). It must be written "in a manner that is clear and understandable to the parent in order to facilitate the parent's ability to follow the requirements of the service plan." *Id.* § 263.102(d). Among other things, the plan must:

- be specific;

- be prepared by the Department in conference with the parents;

- state appropriate deadlines;

- specify the primary permanency goal and at least one alternative permanency goal;

- state the actions and responsibilities that are necessary for the parents to take to achieve the plan goal during the period of the service plan;

- state any specific skills or knowledge that the parents must acquire or learn, as well as any behavioral changes the parents must exhibit; and

- prescribe any other term or condition that the Department determines to be necessary to the service plan's success.

*Id.* § 263.102(a)(1), (3)–(5), (7), (8), (11). The parents are required to sign the plan, and the Department is required to provide them a copy. *Id.* § 263.103(b).

The Family Code requires the court to hold a status hearing to review the child's status and the plan. *Id.* § 263.201(a). Among other things, the court must review the plan for reasonableness, accuracy, and compliance with the court's orders. *Id.* § 263.202(b). After reviewing the plan and making any necessary modifications, "the court shall incorporate the service plan into the orders of the court and may render additional appropriate orders to implement or require compliance with the plan." *Id.* § 263.202(b-1).

The Family Code also provides that a service plan may be amended "at any time." *Id.* § 263.104(a). But in developing any amendment, the Department must work with the parents and inform them of their rights in connection with the amended plan process. *Id.*

## B. Section 161.001(b)(1)(O)

To terminate parental rights, the Legislature requires the Department to establish by clear and convincing evidence at least one of the predicate findings under Family Code Section 161.001(b)(1). And regardless of which predicate it asserts to justify termination, the Department must also prove by clear and convincing evidence that termination is in the child's best interest. *Id.* § 161.001(b)(2).

Section 161.001(b)(1) sets forth twenty-two predicate grounds for termination. *Id.* § 161.001(b)(1)(A)–(V). Most involve conduct by a parent that itself either establishes the parent's intent to abandon the child[5] or would place the child's health or well-being in danger through

---

[5] *See* TEX. FAM. CODE § 161.001(b)(1)(A)–(C) (voluntarily leaving the child alone or in a non-parent's possession and either expressing an intent not to return or failing to provide adequate support and not returning for a

abuse or neglect.[6]  Three predicates concern conduct that demonstrates the parent has previously engaged in dangerous actions toward a child,[7] and two concern violent conduct toward the child's other parent.[8]

The remaining two predicates permit termination for violating a court order.  Section 161.001(b)(1)(I) authorizes termination if the parent willfully disobeys a court order that facilitates the investigation of child abuse or neglect.[9]  And Section 161.001(b)(1)(O), the only ground

specified period of time), (G) (abandoning the child with no identification), (K) (executing an affidavit of relinquishment), (N) (constructively abandoning the child for six months while in the Department's conservatorship), (S) (voluntarily delivering the child to a designated emergency infant care provider with no expressed intent to return).

[6] *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E) (knowingly endangering the physical or emotional well-being of the child), (F) (failing to support the child as able for one year), (H) (voluntarily abandoning a pregnant mother and failing to provide adequate support), (J) (being the major cause of the child's failure to be enrolled in school or the child's absence from home without the parents' consent), (P) (using a controlled substance in a manner that endangers the child's health or safety), (Q) (knowingly engaging in criminal conduct resulting in confinement and inability to care for the child for two years), (R) (causing the child to be born addicted to alcohol or a controlled substance).

[7] *See* TEX. FAM. CODE § 161.001(b)(1)(L) (parent has been convicted of conduct causing death or serious injury of a child), (M) (parent had a previous parent–child relationship terminated based on an endangerment finding under (D) or (E)), (V) (parent has been convicted of solicitation or online solicitation of a minor).

[8] *See* TEX. FAM. CODE § 161.001(b)(1)(T) (parent has been convicted of murder, attempted murder, solicitation to murder, or sexual assault of the other parent), (U) (parent has been placed on community supervision or probation for sexual assault of the other parent).

[9] *See* TEX. FAM. CODE § 161.001(b)(1)(I) (authorizing termination if a parent "contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261").  The subchapter referenced in (I) addresses investigations of child abuse or neglect and authorizes the court to

12

pressed here, permits termination if a parent fails to comply with the requirements for reunification set forth in the service plan. The statute provides:

> The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
>
> (1) that the parent has:
>
> . . .
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of [the Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child . . . .

*Id.* § 161.001(b)(1)(O).

We recently explained that, as its text expressly indicates, "[s]ubsection (O) contemplates direct, specifically required actions." *In re A.L.R.*, 646 S.W.3d 833, 837 (Tex. 2022). We eschew vague plan requirements and have emphasized that the court's order describing the parent's necessary actions "must be sufficiently specific to warrant termination of parental rights for failure to comply with it." *In re N.G.*, 577 S.W.3d 230, 238 (Tex. 2019). Section 161.001(b)(1)(O) thus authorizes termination for failure to comply with a service plan "only when that plan requires the parent to perform specific actions." *A.L.R.*, 646 S.W.3d at 838. And a finding under (O) must be established by clear

---

issue orders as necessary to allow that investigation to proceed. *See id.* § 261.303. No such orders exist here, so (I) is not an issue in this case.

13

and convincing evidence, which the Family Code defines as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

Notably, termination is not automatic or required, even if the Department properly proves a parent failed to comply with a specific plan provision. *See id.* § 161.001(b)(1)(O) ("The court *may* order termination of the parent-child relationship if the court finds by clear and convincing evidence . . . that the parent has . . . failed to comply . . . ." (emphasis added)). Regardless of whether a predicate ground for termination is found by the court or a jury, the trial court bears the ultimate responsibility for determining whether that finding supports termination. This Court and others have recognized that it is the violation of "material" requirements of a plan that justify termination under (O). *See In re J.F.C.*, 96 S.W.3d 256, 278–79 (Tex. 2002) (affirming termination under (O) based on parents' failure to comply with "material provisions of the trial court's orders"); *In re T.L.B.*, No. 01-21-00081-CV, 2021 WL 3501545, at *6 (Tex. App.—Houston [1st Dist.] Aug. 10, 2021, pet. denied) (affirming termination under (O) based on mother's failure to comply with "the material requirements of the plan"); *In re A.P.*, No. 13-19-00342-CV, 2019 WL 6315429, at *7 (Tex. App.—Corpus Christi–Edinburg Nov. 26, 2019, no pet.) (affirming termination under (O) based on mother's failure to comply with "material provisions of the service plan"); *In re A.D.*, 203 S.W.3d 407, 411–12 (Tex. App.—El Paso 2006, no pet.) (affirming termination under (O) based on mother's failure to comply with "material requirements" of her plan). Thus, if the

14

noncompliance is trivial or immaterial in light of the plan's requirements overall, termination under (O) is not appropriate.

Just last term, we expressed concern that, in some cases, courts and parties may perceive a termination case brought under (O) as "easier to prove" because "[c]ourt-ordered service plans can be long and detailed" and "[t]hese plans can be difficult—perhaps impossible—to comply with fully." *In re A.A.*, 670 S.W.3d 520, 531 (Tex. 2023). And we noted that "our judicial antennae are raised and attuned to potential misuses of (O)." *Id.* We granted review in this case to clarify that strict compliance with every detail of a service plan is not always required to avoid termination under (O).

### III. Analysis

Mother challenges the trial court's finding that there is clear and convincing evidence to support termination under Section 161.001(b)(1)(O). More specifically, she contends there is legally insufficient evidence that she "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return" of her children.[10]   TEX. FAM. CODE § 161.001(b)(1)(O). The trial court stated that the Family Code requires "completion of the service plan" and does not allow consideration of whether Mother had demonstrated "substantial compliance":

> So, it states: Failed to comply with the provisions of the Court order. It doesn't say substantially comply, and I will

---

[10] Mother does not dispute that her children were in the Department's conservatorship for at least nine months as a result of their removal under Chapter 262 for abuse or neglect. *See* TEX. FAM. CODE § 161.001(b)(1)(O).

not infer that as the Code does not allow me to infer that provision.

The court of appeals affirmed, stating that Mother "does not dispute" that she "failed to comply with the service plan." 2022 WL 1158680, at *2. To the contrary, Mother asserted in the court of appeals, as she does in this Court, that she complied, or at least substantially complied, with the plan requirements in question.

We address in turn the plan requirements with which the Department contends Mother failed to comply: individual counseling/coping skills, substance abuse classes, and parenting classes.

## A.  Individual counseling/coping skills

The Department asserts that Mother failed to comply with the plan's requirement regarding individual counseling because she was "unsuccessfully discharged" from her counseling sessions with Browne. But the plan nowhere requires that Mother achieve any particular benchmark, such as participating in a specified number of individual sessions or passing a test of any sort. It merely states that Mother "has been referred to begin services" with Browne, "will undergo individual counseling in order to address her needs," and describes topics to be addressed:

- "[Mother] will be [sic] address the reason of removal and explore healthier ways to deal and cope with stressors of life."

- "[Mother] will also address and learn different ways to cop[e] with her mood changes and how [to] give her children a safe and stable environment."

- "[Mother] will also address and find healthier ways to raise her children and work with their family structure."

16

It is undisputed that Mother "beg[a]n services" with Browne. Indeed, the Department's report filed with the trial court one year after removal reflected that Mother attended numerous sessions with Browne and that the Department regarded Mother's counseling with Browne a success at the time. The record also reflects that Mother participated in additional counseling sessions at Grupo Amor and with another therapist to whom Grupo Amor referred her. Thus, the evidence conclusively shows Mother did "undergo individual counseling in order to address her needs." The Department presented no evidence that Mother did not at least "address" identified issues of concern as part of her counseling sessions, either with Browne or with Grupo Amor. Because the plan contains no specific requirement that Mother attain a particular benchmark in her individual counseling services with Browne, the fact that she was discharged by him (apparently at the Department's prompting, for communications the plan did not prohibit) after a year of successful sessions is no evidence that she failed to comply with the plan's "specifically established" requirements regarding individual counseling. *See A.L.R.*, 646 S.W.3d at 837–38 (concluding that actions in a service plan worded as requests rather than positive mandates cannot support grounds for termination under (O)). In short, termination is warranted only for violations of requirements that are "specifically established" in a service plan. TEX. FAM. CODE § 161.001(b)(1)(O). It is not warranted when a parent participates as the plan requires and the Department waits until trial to reveal that it was measuring performance against a previously undisclosed requirement.

## B. Substance abuse and parenting classes

The plan required Mother to "attend, participate and successfully complete parenting classes," "submit to substance abuse classes at S.C.A.N.," and provide the Department with a certificate of completion for each. Mother claimed that she could not reach anyone at S.C.A.N. during the pandemic, so the Department agreed she should instead take her substance abuse and parenting classes with Browne.[11] It is undisputed that she attended those classes with Browne for nearly a year and that she took parenting and substance abuse classes at Grupo Amor after Browne discharged her. In contrast to the individual counseling, the plan did specifically establish a requirement that Mother provide the Department with "a certificate of completion" for both her parenting and substance abuse classes.

The Department contends Mother failed to complete these classes before she was discharged by Browne. For her part, Mother testified that she completed the classes with Grupo Amor and that it provided a certificate of completion to the Department. The caseworker did not refute this. She conceded that Mother completed at least some classes at Grupo Amor. With respect to the certificate requirement, the caseworker testified only that she "do[es]n't have a certificate."

A judgment terminating parental rights is "the 'death penalty' of civil cases." *In re D.T.*, 625 S.W.3d 62, 69 (Tex. 2021) (quoting *In re*

---

[11] The plan was never amended to reflect this change in approved service providers, so if strict compliance were the governing standard, Mother's attending classes with Browne instead of S.C.A.N. could justify a finding that termination is warranted under (O). The Department wisely did not rely on this variance as a basis for termination.

*K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring)). A court's decision to impose this penalty demands more than bureaucratic or mechanical box-checking. *See In re S.M.R.*, 434 S.W.3d 576, 584 (Tex. 2014) (rejecting the Department's argument that termination under (O) was conclusively established where the evidence showed imperfect compliance with the plan and noting that "[p]arents frequently fall short of strict compliance with a family-service plan's requirements").

Terminating the parent–child relationship for the parent's failure to comply with a court-ordered service plan necessarily requires a nuanced assessment of the parent's conduct and progress toward plan completion in light of the totality of the plan's requirements and overall goal. In determining whether the Department has established grounds for termination under (O), the trial court should consider the nature and degree of the parent's alleged noncompliance and the materiality of the disputed plan requirement in achieving the plan's stated goal.

At trial, the Department asserted that Mother failed to comply with the parenting and substance abuse provisions of her plan because she did not provide a certificate of completion for them. The evidence about the Department's receipt of a certificate conflicted, with Mother testifying that Grupo Amor submitted a certificate to the Department, and the caseworker testifying, without explanation, only that she did not have it. But even if the factfinder concluded this evidence established Mother's noncompliance with the plan by clear and convincing evidence, by permitting rather than requiring termination based on such a finding, Section 161.001(b) affords the trial court discretion to determine whether the parent's noncompliance with the

plan was too trivial to warrant a judgment of termination on that ground. *See* TEX. FAM. CODE § 161.001(b). Here, the particular act of noncompliance in question—the failure of Mother to provide the Department a certificate demonstrating what the caseworker concedes she knew—is too trivial and immaterial, in light of the degree of Mother's compliance with the plan's material requirements, to support termination under (O). *See, e.g.*, *J.F.C.*, 96 S.W.3d at 278–79 (affirming termination under (O) based on failure to comply with "material provisions" of the trial court's orders).

The Department contends that every Texas court of appeals has concluded that (O) requires "complete compliance with a parent's service plan" and that "substantial compliance" is insufficient to avoid termination. But the cases the Department cites address a different question: whether a parent who fails to satisfy one or more material requirements in the service plan can avoid termination under (O) merely by showing that he complied with the plan's other requirements. The answer, resoundingly, is no, and that is all these cases say. In that sense, these cases are consistent with this Court's opinion in *J.F.C.* There, we concluded that the predicate ground for termination under (O) was established as a matter of law because it was "undisputed that both parents failed to comply with numerous, material provisions of court orders that specifically required their compliance to avoid restriction or termination of their parental rights." *Id.* at 277. While we recognized there was some evidence of compliance with some plan requirements, we held that "these sporadic incidents of partial compliance do not alter the undisputed fact that the parents violated

20

many material provisions of the trial court's orders." *Id.* at 278.  In other words, parents cannot overcome the complete failure to comply with a material requirement by arguing that performing other requirements constitutes substantial compliance with the plan overall.  *See In re M.C.G.*, 329 S.W.3d 674, 676 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (supp. op. on reh'g) ("The Family Code does not provide for substantial compliance *with a family services plan.*" (emphasis added)).

There may be provisions in particular service plans for which nothing less than strict compliance will suffice to avoid termination.  Easy examples are provisions that require a parent suffering from drug addiction to complete a drug treatment program or require a parent just released from prison to refrain from re-offending.  Even a single or slight violation of these or other material service plan provisions *could* justify termination.  But other requirements—particularly those that are bureaucratic or technical—may be too trivial, in the larger context of the plan and the parent's overall performance, to have their breach give rise to termination.  Where, as here, the plan requires a parent to attend classes with a specified service provider and the parent goes elsewhere (with the Department's approval), the parent's technical noncompliance with that requirement would not support termination under (O).  Similarly, while the completion of required parenting classes may well be necessary to obtain a child's return, the caseworker's bare assertion that she "does not have" a piece of paper proving completion of classes, even if technically required by the plan, cannot support termination when there is other evidence that the classes were completed.  In sum, not all service plan requirements are created equal, and strict

21

compliance with every aspect of every plan requirement is not always the standard.

Here, the trial court's sole basis for terminating Mother's parental rights was its finding that she violated (O). The court essentially concluded that strict compliance was required and that the Family Code did not allow it to "infer" that compliance with a plan's provisions, while not perfect, could be sufficient to avoid termination under (O). The court of appeals likewise rejected Mother's argument that she substantially complied with her plan's requirements, relying on a general rule that "substantial compliance with a family service plan is not the same as complete compliance." 2022 WL 1158680, at *3. Both reflexively rejected Mother's testimony and argument about the nature and degree of her compliance and concluded her failure to achieve strict compliance with every aspect of the plan required termination.

We hold that the lower courts erred in concluding that strict or complete compliance is always necessary to avoid a judgment of termination under (O). While the Department could have presented evidence that might explain why the failure to satisfy its preferred manner of compliance with the plan would support termination, no such evidence appears in the record. In light of Mother's compliance with the material provisions of the service plan and the caseworker's concession that Mother complied with the plan—just not in the way that suited the Department—we hold that there is insufficient evidence to support termination by clear and convincing evidence under (O).

## IV. Conclusion

The trial court and the court of appeals erroneously concluded that Mother's failure to strictly comply with all the requirements of her service plan required termination of her parental rights. A proper application of (O) is less mechanical. In evaluating whether termination is warranted, the trial court must ensure that any asserted noncompliance is of a requirement that is neither unwritten nor vague but rather "specifically established" in a court-ordered plan. Additionally, to justify termination, the noncompliance must not be trivial or immaterial in light of the nature and degree of the parent's compliance and the totality of the plan's requirements. We reverse the court of appeals' judgment in part, and we render judgment vacating those portions of the trial court's Order of Termination relating to the termination of Mother's parental rights. The remainder of the trial court's termination order is affirmed.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** December 15, 2023

23