Opinion issued April 10, 2025



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00781-CV

———————————

## IN THE INTEREST OF K.S., A Minor Child

———

**On Appeal from the 312th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-44859**

———

## MEMORANDUM OPINION

This is an appeal from the trial court's termination of the mother's rights to K.S., who was five years old when the court rendered judgment. The trial court found that the mother constructively abandoned K.S. and failed to comply with provisions of a court order that specifically established the actions necessary to obtain return of K.S. The court also found that termination of the mother's parental

rights was in K.S.'s best interest. On appeal, the mother raises three issues, challenging (1) the propriety of the motion to modify and for termination of parental rights, (2) the sufficiency of the evidence to support the trial court's finding that the mother constructively abandoned K.S., and (3) the appointment of the Texas Department of Family and Protective Services (the "Department") as the sole managing conservator of K.S.

We affirm.

## Background

K.S. was born in July 2019, and the Department took possession of her in July 2020 after receiving a referral alleging neglectful supervision by her parents. The referral alleged that the mother was abusing drugs, which were left within reach of K.S., that the mother threatened to physically abuse K.S. in text messages to K.S.'s father, and that both parents neglected K.S.'s needs for food and hygiene. In July 2020, the Department filed an original petition for conservatorship and termination of the parent-child relationship, seeking, among other things, appointment as K.S.'s managing conservator, appointment of K.S.'s parents as possessory conservators or, in the alternative, termination of their parental rights to K.S. In June 2022, the matter was resolved by an agreed decree. The trial court appointed the Department as K.S.'s sole managing conservator, appointed K.S.'s mother as possessory conservator, and ordered supervised visitation between K.S.

2

and her mother for one hour twice a month, plus two hours weekly at church. The order provided that K.S. was not to be removed from her current placement without a court order. In addition, the trial court found K.S. would continue in care and that the court would "continue to review the placement, progress and welfare of the child."

After entry of the June 2022 order, the Department continued to offer the mother services and maintained concurrent permanency goals for K.S. of adoption and family reunification by the end of 2022. To achieve family reunification, the Department's August 2022 family service plan required the mother to complete actions relating to substance abuse testing and treatment (including working a twelve-step program with a sponsor), psychological assessment and treatment (including psychiatric medication management), obtaining and maintaining stable housing and employment, attending visitation with K.S., supporting her child, refraining from criminal activity, and providing the Department with information. The plan indicated that failure to submit to drug testing would be treated as a positive test result.

From June 2022 through July 2023, the mother attended visitation with K.S. 23 times and cancelled or missed visits 7 times. Department caseworkers reported that the mother demonstrated "some knowledge of parenting skills during family visits as she sits and interacts with the child appropriately, assist[s] her with

mealtime, and responds to her appropriately." The mother worked at Taco Bell from September 2022 through early October 2022, earning a little less than $750 in total.

In July 2022, the mother entered outpatient substance abuse treatment, but she was unsuccessfully discharged in September 2022. In August and December 2022 and in February 2023 and June 2023, urine or hair follicle drug tests were positive for cocaine and its metabolites (including benzoylecgonine), marijuana, methamphetamines, and alprazolam.[1] The mother failed to appear for required drug testing 16 times from September 2022 through July 2023. Sometime in approximately February 2023, the mother told a provider that she had relapsed and wanted to return to drug treatment to "stay clean." But she failed to pursue treatment or communicate with providers who reached out to her for scheduling and assessment. Despite encouragement from providers and caseworkers, the mother repeatedly declined and refused to pursue inpatient substance abuse treatment.

The mother was diagnosed with major depressive disorder, anxiety, and bipolar disorder, and she had prescriptions for Prozac, Atarax, and Seroquel to treat these conditions. The mother was successfully discharged from therapy that

---

[1]     Before the June 2022 order, from January through May 2022, the mother had several consecutive negative urine drug tests and two hair follicle tests that were positive for cocaine and methamphetamine.

covered domestic violence, anger management, and individual therapy, and she attended some individual therapy in August and September 2022. The mother told the caseworker that she was engaging in individual therapy with another provider, but the caseworker noted that the mother's attendance was inconsistent.

In July 2023, the Department filed a motion to modify the conservatorship over K.S. and for involuntary termination of her mother's parental rights.[2] The pleading alleged that the mother had committed one or more of the following acts or omissions: (1) endangered K.S.; (2) executed an affidavit of relinquishment; (3) constructively abandoned K.S.; and (4) failed to comply with a court order that specifically established the actions necessary for her to reunify with K.S.[3] After the Department filed its motion to modify, the mother missed or failed to appear for 21 drug tests from August 2023 to August 2024. The mother "repeatedly [showed] the inability to provide a safe, drugfree environment while having" possession of a vulnerable child. She "struggl[ed] to meet the basic needs of the child which includes clothing and financial resources." In October 2023, the mother failed urine and hair follicle drug tests.

After the July 2023 motion, the mother's visits with K.S. also became inconsistent. The mother missed two visits with K.S. prior to the June 2022 order.

---

[2]    The Department sought and obtained termination of K.S.'s father's parental rights, but he has not appealed.

[3]    *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), (K), (N), (O) (predicate acts).

But between July 2022 and August 2024, the mother canceled or failed to appear for 23 visits. The Department had no information about the mother's employment, except her statement to a caseworker in March 2024 that she had been hired by a fast-food restaurant.

In early September 2024, the mother signed an irrevocable mediated settlement agreement in which she agreed to execute an affidavit of voluntary relinquishment of her parental rights to K.S. and that the Department would continue as sole managing conservator of K.S. The mother did not, however, execute an affidavit of voluntary relinquishment.

In mid-September 2024, the trial court held a final hearing on the Department's motion to modify and petition for termination of the mother's rights. The caseworker, who had been assigned to K.S.'s case about five months earlier, testified that the mother had attended five visitations in 2024 and had brought K.S. clothes once in June 2024. The caseworker acknowledged an apparent bond between K.S. and her mother, but she opined that the mother had not shown a commitment to building a relationship with K.S. based on her inconsistent visitation, continued drug use, and failure to comply with the family service plan, which had been provided to the mother, filed with the court, and made an order of the court.

The caseworker testified that the mother did not complete individual counseling or substance abuse treatment, did not provide proof of stable housing and income, failed to submit to drug testing since April 2024, and did not engage with a twelve-step program like Narcotics Anonymous despite her history of using methamphetamines and cocaine. The caseworker acknowledged that she had not visited or tried to visit the mother's home, saying she had not received any information about whether it was a safe and stable home for K.S. She said the mother had recently told her that she was unemployed.

The caseworker testified that termination of the mother's rights was in K.S.'s best interest because the mother had not shown that she was "stable and able to care for" K.S., who had been living in foster care with the family that adopted her biological sister since April 2023. According to the caseworker, the foster family was meeting K.S.'s needs and wanted to adopt her. She said K.S. had recently started kindergarten and was not in special education.

The Child Advocates volunteer testified that K.S. was "doing great" in her foster placement where she had "a stable and safe environment," "an adorable room," "toys," a "wonderful school," and sibling "who she's very bonded to." She believed it was in K.S.'s best interest for the mother's rights to be terminated and for K.S. to be adopted by her caregivers. She expressed concern about the mother's inconsistent visitation and its effect on K.S., as well as the mother's failure to

7

provide material support to K.S. The volunteer testified that she had tried multiple times to schedule a home visit with the mother, who did not respond. She believed that the mother had not done much to complete the recommended services and could not meet K.S.'s needs. She testified that termination of the mother's rights was in K.S.'s best interest because she "is at a young and vulnerable age and has needs. . . . food, clothing, stable environment, medical care," that was were not met by K.S.'s mother. The volunteer said that Child Advocates would not recommend reunification with the mother in the absence of negative drug tests and six months of stable housing and employment that would demonstrate the mother's ability to provide K.S. with a safe and stable environment.

The foster mother testified that she had been caring for K.S. since April 2023. The foster father described K.S.'s personality: "She is a little love bug. She loves everyone. She runs up and hugs people. She loves to eat, and she loves to antagonize her older sister. Those are the top two, two or three things that she loves." He also called her "highly intelligent." He testified that he would like to adopt K.S.

The trial court entered an order finding that there had been a material and substantial change in circumstances since entry of the June 2022 agreed decree. The court found by clear and convincing evidence that the mother committed the predicate acts under Family Code Section 161.001(b)(1)(N) and (O) by

constructively abandoning K.S. and failing to comply with the provisions of a court order that specifically established the actions necessary for her to obtain return of K.S., and that termination of the mother's parental rights was in K.S.'s best interest. The mother appealed.

## Analysis

### I.      Sufficiency of the Evidence

The mother argues that the evidence is legally and factually insufficient to support the trial court's finding that she constructively abandoned K.S. *See* TEX. FAM. CODE § 161.001(b)(1)(N).

When the Department seeks to terminate parental rights under section 161.001 of the Family Code, it must establish by clear and convincing evidence that the parent committed one or more of the statute's enumerated acts or omissions that justify termination, and also that termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b). Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

Here, the trial court found that the mother committed two predicate acts— constructive abandonment, TEX. FAM. CODE § 161.001(b)(1)(N), and failure to comply with the provisions of a court order that specifically established the actions

necessary for the mother to obtain return of the child, TEX. FAM. CODE § 161.001(b)(1)(O)—and that termination was in K.S.'s best interest. The mother challenged the § 161.001(b)(1)(N) finding, but she did not challenge the trial court's finding under § 161.001(b)(1)(O) or the best-interest finding.

Because the mother did not challenge both statutory predicate grounds for termination, we need not review the merits of her challenge to the constructive abandonment finding. *See In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014) ("[C]lear and convincing proof of any one ground will support a judgment terminating parental rights, if similar proof also exists that termination is in the child's best interest."); *see In re J.M.H.*, No. 01-15-00734-CV, 2015 WL 8929569, at *3 (Tex. App.—Houston [1st Dist.] Dec. 15, 2015, no pet.) (mem. op.) (declining to review challenged predicate finding when parent did not challenge all predicate findings on appeal); *Toliver v. Tex. Dep't of Family & Protective Servs.*, 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (same).

We overrule this issue.[4]

---

[4] Although the mother did not challenge the section 161.001(b)(1)(O) or best interest findings, we note that clear-and-convincing evidence supports both findings. *See In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002) (defining clear-and-convincing evidence); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (setting forth best-interest factors); *see also In re R.J.G.*, 681 S.W.3d 370, 381 (Tex. 2023) (explaining that termination pursuant to section 161.001(b)(1)(O) requires failure to comply with material requirement of court order). The evidence showed K.S.'s mother repeatedly failed to comply with material requirements of the court's order, by failing to: attend visitation, refrain from using illegal drugs, submit to drug tests, engage in therapy and a twelve-step program to address

## II. Sole managing conservator

The mother also argues that the trial court abused its discretion by appointing the Department sole managing conservator because the termination of her parental rights was improper. Conservatorship determinations are reviewed for an abuse of discretion and will be reversed only if the decision is arbitrary and unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

The Family Code provides that if, as in this case, the trial court terminates the parent-child relationship, "the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." TEX. FAM. CODE § 161.207(a); *see In re J.D.G.*, 570 S.W.3d 839, 856 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). An order terminating the parent-child relationship divests a parent of legal rights and duties with respect to the child. *See* TEX. FAM. CODE § 161.206(b). Once we overrule a parent's challenge to an order terminating her parental rights, the trial court's appointment of the Department as sole managing conservator may be considered a "consequence of the termination." *J.D.G.*, 570 S.W.3d at 856.

---

mental health concerns, and obtain gainful employment that leads to financial stability. *See R.J.G.*, 681 S.W.3d at 381. As to best interest, though K.S. is too young to express her desires, the evidence showed that she was well bonded in her current foster placement, which includes her biological sibling, and that her foster parents, who are able to meet all of her needs, wish to adopt her. *See Holley*, 544 S.W.2d at 371–72. The evidence also showed K.S.'s mother's inconsistent visitation, drug use, failure to address her mental health issues, and financial instability. *See id.*

Having overruled the mother's challenge to the order terminating her parental rights, we conclude that the trial court did not abuse its discretion by appointing the Department sole managing conservator of K.S. We overrule this issue.

In light of this conclusion, we do not need to address the mother's issue regarding the Department's motion to modify conservatorship. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the trial court's decree.


Susanna Dokupil
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.